THE CORN EXCHANGE BANK of the City of New York, Respondent, *v.* AMERICAN DOCK AND TRUST COMPANY, Appellant.

1. NEGOTIABLE WAREHOUSE CERTIFICATES — ISSUANCE BY OFFICER TO HIMSELF, WITHOUT EXPRESS AUTHORITY — LIABILITY OF COMPANY TO TRANSFEREE. If a bank in good faith takes from an officer of a warehouse company, who has express authority to issue the company's negotiable warehouse certificates in favor of third parties for goods deposited by them, but who has no express authority to issue certificates in favor of himself, a certificate issued by him as such officer to himself as an individual, as collateral security for a personal loan, and it turns out that the certificate was fraudulently issued, as the officer had at the time no goods on deposit with the company, the bank can hold the company liable as for a conversion of the goods mentioned in the certificate only by showing that the certificate was valid as to a holder thereof for value, by reason of implied authority having been conferred upon the officer to issue certificates in his own favor for goods deposited by him, and not by merely showing that statements made to the bank by a representative of the company in charge of its warehouse, that the goods mentioned in the certificate were on deposit, were false; and a recovery based solely upon the falsity of such statements, and not upon the validity of the certificate by reason of implied authority to issue it, is untenable.

2. TRIAL — CHARGE — SUBMISSION OF CASE TO THE JURY ON AN UNTENABLE QUESTION. When a case and the evidence present two questions of fact, on one of which a recovery would be tenable, but on the other untenable, as matter of law, and the trial court expressly withholds the first question from the jury, and submits the second to them as the sole

basis for a recovery, the error is not cured, so as to sustain a recovery, by the fact that the charge contains expressions susceptible of such a construction as to impliedly enable the jury to consider some elements of the expressly excluded question.

*Corn Ex. Bank* v. *Am. D. & Tr. Co.*, 78 Hun, 400, reversed.

(Argued March 4, 1896; decided April 14, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 18, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

Action to recover damages for the conversion of one hundred and ninety-four bales of cotton, alleged to belong to the plaintiff, which the defendant refused to deliver upon demand.

The defendant, by its answer, after admitting the corporate character of the parties, pleads a general denial and alleges that the supposed cotton never had an existence, but that the president of the defendant, M. W. Stone, fraudulently issued warehouse receipts in his own favor for cotton to the amount mentioned in the complaint, and transferred the same, as collateral security for his personal debt to the plaintiff, which had notice at the time of his want of authority.

The facts, so far as material, are stated in the opinion, and in *Hanover National Bank* v. *American Dock & Trust Co.* (148 N. Y. 612).

*Thaddeus D. Kenneson* for appellant. The trial court erred in denying the motion of the defendant at the close of the evidence to dismiss the complaint, and the exception to the denial of said motion was well taken. ( *W. S. L. S. Bank* v. *Parmelee*, 95 U. S. 551; *Chrystie* v. *Foster*, 61 Fed. Rep. 551; *Dob* v. *Halsey*, 16 Johns. 34; *Joyce* v. *Williams*, 14 Wend. 141; *Foot* v. *Sabin*, 19 Johns. 154; *Levenson* v. *Lane*, 13 C. B. [N. S.] 278; *Stall* v. *Catskill Bank*, 18 Wend. 466.) There was no evidence of express authority from the defendant to its president, Stone, to issue the warehouse receipts. (*Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.*, 143 N. Y. 559.)

There was no evidence of authority by estoppel. (*People* v. *Bank of N. A.*, 75 N. Y. 547, 560.) The defendant is not estopped by negligence on the part of its board of directors from denying the authority of Stone as its president to issue the warehouse receipts. (*People* v. *Bank of N. A.*, 75 N. Y. 547; *Wheeler* v. *McGuire*, 86 Ala. 398.) The evidence of implied authority was not such as to warrant its submission to the jury. (*People* v. *Bank of N. A.*, 75 N. Y. 547; *Graves* v. *Horton*, 35 Minn. 66; *Nat. Bank of Republic* v. *N. P. Co.*, 56 Hun, 136; *Phillips* v. *Campbell*, 43 N. Y. 271; *M. M. Co.* v. *A. C. Bank*, 104 U. S. 192; *Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.*, 143 N. Y. 559; *Wilson* v. *Williams*, 14 Wend. 146; *W. Nat. Bank* v. *Armstrong*, 152 U. S. 346; *Alexander* v. *Cauldwell*, 83 N. Y. 480; *Marsh* v. *Bd. of Suprs.*, 10 Wall. 676.) Before taking the warehouse receipts, Nash was under a legal obligation to ascertain, by inquiry of some one other than Stone, whether Stone, as president of the defendant, had authority to issue receipts in his own favor. (*Claflin* v. *F. & C. Bank*, 25 N. Y. 293.; *Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.*, 53 N. Y. S. R. 905.)

*John M. Bowers* for respondent. Defendant is estopped by reason of the representations made by Jewell, the party in charge of defendant's storage warehouses, from denying that it had on storage for Stone at the date the inquiry in question was made the bales of cotton set forth in the complaint in this action. (*F. & M. Nat. Bank* v. *Lang*, 87 N. Y. 209; *C. Nat. Bank* v. *Nat. Bank Comm.*, 50 N. Y. 575; *Voorhis* v. *Olmstead*, 66 N. Y. 113; *Trustees, etc.*, v. *Smith*, 118 N. Y. 641; *Justh* v. *Nat. Bank Comm.*, 56 N. Y. 478; *How* v. *U. M. L. Ins. Co.*, 80 N. Y. 40; *Carpenter* v. *G. A. Ins. Co.*, 135 N. Y. 305; *Phelps* v. *People*, 72 N. Y. 375; *Clews* v. *Bank of N. Y. N. B. Assn.*, 89 N. Y. 418; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 202.) The defendant had conferred upon its president authority to issue warehouse receipts in his own favor as an individual

where he had the cotton represented by the receipts on storage. (*Hastings* v. *B. L. Ins. Co.*, 138 N. Y. 473; *Conover* v. *M. L. Ins. Co.*, 1 N. Y. 290; *Booth* v. *F. & M. N. Bank*, 50 N. Y. 396; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Patterson* v. *Robinson*, 116 N. Y. 193; *Holmes* v. *Willard*, 125 N. Y. 75; *Rathbun* v. *Snow*, 123 N. Y. 343; *Perry* v. *C. B. C. W. W. Co.*, 67 Hun, 456; 143 N. Y. 637; *Odd Fellows* v. *F. Nat. Bank*, 42 Mich. 464; *F. Nat. Bank* v. *N. P. Co.*, 119 N. Y. 256.) Stone's representation of the extrinsic fact, to wit, whether such cotton was on storage, would be equally binding in such case concerning his own cotton as that of any third person. (*Bank of N. Y. N. B. Assn.* v. *A. D. & T. Co.*, 143 N. Y. 559; *Griswold* v. *Haven*, 25 N. Y. 595; *Titus* v. *G. W. T. Co.*, 61 N. Y. 237; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195; *F. A. Bank* v. *F. S. S. & G. S. F. R. R. Co.*, 137 N. Y. 242; *M. L. Ins. Co.* v. *F. S. S. & G. S. F. R. R. Co.*, 139 N. Y. 146; *Goodman* v. *Simonds*, 20 How. [U. S.] 343; *Potts* v. *Taylor*, 140 Penn. St. 601; *Holdeman* v. *Bank*, 28 Penn. St. 440; *Morehead* v. *Gilmor*, 77 Penn. St. 118.) In any event authority having been conferred to issue warehouse receipts in Stone's favor as an individual where the cotton was in fact on storage, a third person dealing with him on the security of such receipts was bound at the utmost only to ascertain the extrinsic fact, to wit, whether the cotton was on storage as set forth, or to make due inquiry as to the fact of such storage. (*G. Nat. Bank* v. *State*, 141 N. Y. 379.) The plaintiff was entitled to recover upon the law of estoppel. (*F. A. Bank* v. *F. S. S. & G. S. F. R. R. Co.*, 137 N. Y. 231; *M. L. Ins. Co.* v. *F. S. S. & G. S. F. R. R. Co.*, 139 N. Y. 146.)

VANN, J.   For the third time the defendant is before this court to defend itself from liability on account of the misconduct of its former president, the late M. W. Stone. The actions were all based upon warehouse certificates issued by

Stone, as president, to his own order, for cotton purporting to have been deposited by him in the storehouses of the defendant.

The plaintiff in the first action sought to make the defendant liable upon a certificate alone, with proof of Stone's authority to issue such certificates to third persons, but without any evidence of authority in him to issue certificates to himself, and the court held that he had no power to issue certificates in his own favor, even for cotton that he had actually deposited with the defendant. (*Bank of New York* v. *This Defendant*, 143 N. Y. 559.)

In the next action, the effort to recover from the defendant was based upon a certificate, supported by evidence, tending to show that the defendant's directors, knowing, or being presumed to know, that Stone had occasionally issued certificates to himself, acquiesced in that assumption of authority, and the court held that acquiescence, under the circumstances then disclosed by the record, would permit the inference that Stone had implied authority to issue a certificate on his own account for cotton actually deposited by him. Upon this basis it was further held that in issuing the certificate then in question, although for cotton never deposited, Stone was acting within the scope of his apparent authority, so that his representations were binding upon the defendant, which thus became liable to a purchaser for value, even with notice that express authority to certify to himself had not been conferred. (*Hanover National Bank* v. *This Defendant*, 148 N. Y. 612.)

The facts of the case now before us are, to a great extent, identical with those in the case last cited, yet it lacks some elements there appearing, and has some features peculiar to itself. While the five certificates, issued by Stone in his own favor in 1881 and 1886, are common to both cases, it does not now appear that all of those certificates were written upon a printed blank by the defendant's secretary, although the most of them were, nor were the stubs, or Stone's personal receipts for the certificates, in evidence. The statements of the secretary in response to the inquiries of the assistant cashier of the Hano-

ver National Bank were not proved upon the trial now under review, but no other important evidence was disclosed by the record in that case that does not substantially appear in the record now presented.

On the other hand, it appears that the plaintiff in this action had made loans to Stone prior to the ninth of February, 1891, upon certificates issued by him as president, to himself as an individual, as many as four or five times. On that day the plaintiff lent him $5,000, taking as security two certificates issued by him in the name of the defendant, to his own order, for one hundred and ninety-four bales of cotton, dated respectively December 22d, 1890, and December 23d, 1891, each written by him on the blank commonly used, and in the usual form, except that the number was not printed in blue figures in the corner, as it was upon the regular receipts, but was written in that place with a pen. The proceeds of the loan were placed to his credit, as a depositor in the plaintiff's bank. These certificates were fraudulently issued by him, as he had at the time no cotton on deposit with the defendant. As the plaintiff made many loans upon warehouse receipts as collateral, it had been its custom for years to cause the property named in the certificate to be examined immediately after the loan was made, and it had assigned to that duty a clerk named Mead, who generally, as well as in this instance, was furnished with a slip containing the substance of the certificate for the purpose of making the examination. Mr. Mead went with the slip to the warehouses of the defendant and there saw Mr. Jewell, the man in charge, as he had on many occasions before when detailed to examine cotton. He testified, in substance, that Jewell informed him that Stone had the cotton mentioned in the slip then on storage with the defendant. He made no attempt to go into the room where the cotton was stored and actually see it, as his instructions required, but returned to the plaintiff and reported that "the cotton was there and was now inspected." Mr. Jewell, in his testimony, admitted that the interview took place, but denied telling Mead that Stone had the cotton on deposit.

The question as to the implied authority of Stone to bind the defendant by issuing the certificates under consideration was not submitted to the jury, but the learned trial judge instructed them as follows, viz. : " The plaintiff cannot recover upon these certificates, because the certificates were issued by Mr. Stone himself in his own name, and because there was no cotton there as represented in those certificates. But the plaintiff may recover in this action if you shall find, from the evidence in the case, that before it parted with the money that it had loaned to Mr. Stone, the defendant, or its agents, did something that caused it to part with that money. The plaintiff says that sometime after the 9th day of February it sent one of its clerks or employees to the warehouses, and he was there told by an employee of the defendant that Mr. Stone had 192 bales of cotton in that warehouse. That fact is denied by the defendant. Upon that fact depends the right of the plaintiff to recover in this action. I have told you that the plaintiff cannot recover upon the certificates alone. The plaintiff can only recover in this action if you shall find, from the evidence in the case, that Mr. Jewell told Mr. Mead that Mr. Stone had 192 bales of cotton there, and it recovers then because the defendant will be estopped from denying the truth of the statement. So you see that the point to which you should direct your minds in the first instance is, did Mr. Jewell tell Mr. Mead that Mr. Stone had 192 bales of cotton there ? If he did, the plaintiff may recover. If he did not, the plaintiff cannot recover no matter how much it has lost. I have said nothing about the prior certificates because the view of the law I have taken makes it immaterial." The trial court was apparently of the opinion that Stone had actual authority to issue certificates to himself for cotton that he had in fact deposited. The deposit thus became in his mind the vital fact, and he charged, in substance, that if Jewell represented that the cotton was on hand the defendant was estopped from denying it, and was, therefore, liable the same as if the cotton had actually been deposited. This was an erroneous theory upon which to

send the case to the jury, as the right to recover did not depend on the possession of the cotton by the defendant, but on the alleged contract between Stone and the defendant, of which the certificates were the evidence. The action is for the conversion of cotton claimed to have once belonged to Stone, but he had sold no cotton to the plaintiff. He had simply sold it a certificate which, if valid, entitled the holder thereof to receive from the defendant the cotton described therein. The plaintiff's right to recover was based on the contract embraced in the certificates. If that contract is valid, as to third persons who parted with value on the strength of it, the defendant is liable. Its validity depends upon the authority of Stone to make such an agreement as to cotton actually deposited by him, representing as he did both contracting parties. That authority, if it existed as to the defendant, came from its board of directors, either expressly or impliedly, and as express power was not conferred, the question was as to whether implied power had been conferred. That depended on the directors' knowledge of Stone's assumption of authority in similar cases, and their acquiescence in its exercise. If it had been found as a fact that the power existed, the actual presence of the cotton on deposit would have been immaterial, as the defendant would be estopped from denying it. The presence of the cotton, as an independent fact, would confer no right on the plaintiff, unless it proved title thereto, and it had no title, provided the certificates were invalid, while, if they were valid, the defendant was liable, as we have seen, whether there was any cotton on hand or not. (*Hanover Bank Case, supra.*) Therefore, as Jewell's statements, if true, would not, as such, enable the plaintiff to recover, they cannot, if false, make the defendant liable, although they may be material on the question of authority.

The learned counsel for the plaintiff, however, contends that the error was corrected by the trial judge before the case reached the jury, because, at the request of the defendant, he charged " that the defendant cannot be estopped from deny-

ing the genuineness of the alleged warehouse receipts, unless the jury find that Mr. Jewell represented to Mr. Mead that the defendant had, at the time of the inquiry, the cotton mentioned in the alleged warehouse receipts, and that that cotton belonged to Stone, and that such representation was made with knowledge that the bank was making the inquiry for the purpose of acting or relying upon it." This request was apparently based on the theory that, as the court had withheld from the jury the question of Stone's authority, as founded on the knowledge and acquiescence of the directors, and had charged that the vital question was that of estoppel, based on the statement that the cotton was in store, and as estoppel could not be predicated on a casual answer given by Jewell to Mead's inquiry, the jury should, therefore, be further required to find that Jewell made the statement knowing that the bank expected to act upon it. While the word "genuineness," as used in the request, might suggest the question of authority to the mind of a trained lawyer, it would not be apt to convey that impression to the jury or lead them to suppose that the question of Stone's implied authority to issue the certificates was submitted to them to pass upon. That would involve the abandonment of the theory advanced in the body of the charge and the substitution of a new and independent basis of recovery. The jury could not well have understood the judge to mean this, for when the counsel for the defendant, in their presence, excepted to the instruction " that if Mr. Jewell made a representation that Mr. Stone had cotton " on deposit ".that the dock company is estopped to deny the statement and the authority of Mr. Stone to issue those receipts, if at the time, or after that time, they could have prevented the withdrawal of the money from the bank," the court said: "I do not modify it except by saying, if he had the money in the bank." This shows that the learned judge still adhered to his original position. The charge should receive such a construction as ordinary men, not learned in the law, would be apt to place upon it, and it would be unreasonable to suppose that the jury

understood the judge to impliedly withdraw all that he had previously said as to the basis of liability, and in one sentence to substitute a new basis so obscurely described as to leave them in the dark as to their duty. The issues upon which the rights of the parties depend have not been decided, but a recovery has been permitted upon facts which, standing alone, do not warrant it, and the defendant has protected itself by an exception. While the evidence presented a question of fact for the jury, they were not allowed to pass upon that question, but were told to decide another, and, as they decided it, to find for the plaintiff or defendant. A presumption of injury to the defeated party necessarily arises under such circumstances, for judgment has passed against it upon untenable grounds.

The judgment should be reversed and a new trial granted, with costs to abide event.

All concur, except GRAY, J., not voting.

Judgment reversed.