THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
JUAN BONILLA LUGO, Defendant and Appellant.

No. CR-64-7.      Decided November 25, 1964.

*Héctor Lugo Bougal* for appellant. *J. B. Fernández Badillo,
Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández,
Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The criminal cause against appellant Juan Bonilla Lugo
for embezzlement (felony) was initiated by the filing of

an information which charged that on November 27, 1961, "while acting as agent, representative, or employee of the C & D Engineering, Inc., he fraudulently appropriated the amount of three hundred dollars ($300) which amount had been delivered to him as advance payment for the construction of a house, said Juan Bonilla Lugo having appropriated said amount of money entrusted to him to be delivered to said C & D Engineering, Inc., *and having used said amount of money for his own benefit, thus depriving the legal owner from said amount of money.*"

At the trial—held by the court—the evidence for the prosecution consisted of the testimony of two witnesses, Gerardo Maldonado Rivera and Abraham Marsach Rosado. It was also admitted that witness Michael Chacker, President of the prejudiced Corporation, would testify in the same terms of the sworn statement offered by him during the preliminary investigation. Appellant testified in his own defense. He was found guilty. He was sentenced to serve an indeterminate sentence of 4 to 10 years in the penitentiary, which sentence was suspended under certain conditions.

The only error assigned is that "the evidence admitted gives rise to a reasonable and well-grounded doubt which should have been interpreted in favor of defendant." Appellant emphasizes in his brief that the acquittal is not sought on the fact that his statement is contradictory to the evidence for prosecution, or that it should have merited the credit of the trial court, but rather that, weighed as a whole, it gives rise to a reasonable and well-grounded doubt as to the guilt of defendant. On his part, the Solicitor General adduces that this is a matter in which we must apply our well-settled rule of not intervening with the weighing of the evidence made by the trier, in the absence of proof of passion, prejudice, or partiality. We shall point out that in reality the strict application of said rule is not required since we are not concerned with the weighing of the *oral*

*testimony* of the witnesses alone. We have here the peculiarity that the *only testimony adverse* to appellant was that of the officer of the prejudiced Corporation, who did not appear at the hearing, but whose version was received through his written statement. Let us see.

■ Witness Maldonado limited himself to establishing that he delivered to appellant the amount of $300 as down payment for a house to be constructed for him by the corporation C & D Engineering, Inc. Marsach Rosado, time-keeper and clerk of the Corporation, substantially testified that Bonilla was the master builder of said entity, and that in such capacity was bound to report to the office in San Juan the expenses incurred in the projects in Ponce; that defendant was authorized to receive the money of the company and *"could use any amount for expenses of the project,* such as construction materials which might be needed"; that a petty cash fund was raised; that sometimes Bonilla had to travel to San Juan to fetch said fund; that on November 27 Bonilla made a payment from said fund to de Jesús for services rendered to the corporation, and that he also received several checks with insufficient funds that Chacker had issued; that he made another payment for a two-week salary to the chauffeur of the Corporation. Specifically, upon being questioned as to whether "this man, as agent or representative of the corporation, made such payments" he answered affirmatively and ratified that "he was authorized." As it may be seen, these testimonies conclusively establish two of the three elements of the offense charged, namely: (1) a definite property, and (2) the existence of a fiduciary relation, *People* v. *Calderón,* 18 P.R.R. 568 (1912).

To establish the third element of the offense, that is, the fraudulent appropriation or conversion, it is necessary to rely on Chacker's written statement. Below we copy the pertinent part:

"Q. Does Juan Bonilla Lugo work for you?

A. Yes, sir, he used to work as master builder and representative of the Company here in Ponce.

Q. Was he authorized to receive payment for works of the Company?

A. Yes, sir, he was in charge of the office in Ponce.

Q. Was he authorized to receive payments for contracts of work which the company was going to perform?

A. Yes, sir.

Q. Do you know from your own knowledge, whether there was any contract with Gerardo Maldonado Rivera?

A. Yes, sir. He made a contract.

Q. And said Gerardo Maldonado Rivera, had he agreed to pay in instalments?

A. Yes, sir, and he paid $300 to Juan Bonilla Lugo for blueprints we made.

Q. Was that money delivered to the Company?

A. No, sir, never.

Q. And how did you learn that Gerardo Maldonado had made said payment?

A. Because said man complained that he had not received the work. He told the timekeeper that he had paid some money to Juan Bonilla Lugo and the timekeeper asked me, and I asked Bonilla, and Bonilla told me that he had received the money, $300, and that he had it in the bank, and he said that he was going to send his fiancée to fetch the money in the bank to give it to me, but he has never done so.

Q. He never delivered it to you?

A. No, sir.

Q. As yet, you have not received the $300 that Juan Bonilla Lugo received from Gerardo Maldonado Rivera?

A. No sir, I have not received it. I don't know if I acted correctly, but I refunded the $300 to Gerardo Maldonado Rivera from the money of the Company in order to keep our credit in good standing and I published an ad in the papers asking any person who might have had dealings with Juan Bonilla Lugo to notify me immediately.

Q. Had you authorized Bonilla to keep the money?

A. No, sir.

Q. *Was it his duty to deposit it with the Company?*

A. *Yes, sir.*" (Italics ours.)

Appellant, testifying as the only witness for the defense, said that he was authorized to draw on the petty cash fund "for anything he saw fit for the benefit of the Corporation"; that the $300 he received from Maldonado was deposited in said fund by order of Chackers, who took $40 from said amount; he told him that he would not like that the money be taken to San Juan because it belonged to a project in Ponce and he did not want things to get mixed up;[1] that the balance was used to pay Carlos de Jesús the commission corresponding to him from his business with Maldonado, the two-week salary of the chauffeur of the Corporation, Ramón Román, and to pay off several checks with insufficient funds issued by Chacker in favor of creditors, which made defendant liable as representative of the Corporation in Ponce;[2] that before leaving his employment he balanced the petty cash fund, and that the first notice he had of the $300 mentioned in the information was when he received the judicial notification; that he cannot present the receipts because he delivered them to officials of the Corporation when he rendered the accounts and they kept them. On cross-examination he admitted that the usual procedure was to remit the funds coming from the business in Ponce to San Juan and then certain amounts were designated to cover the expenses incurred; but he insisted that in this specific occasion Chacker himself authorized him to include the money received from Maldonado in the petty cash fund.

From Chacker's written statement two incriminating circumstances may be inferred: that the money was not delivered to the Corporation and that appellant's duty was to

---

[1] The evidence insinuates that the Corporation was in economic difficulties and that it could not confront its obligations punctually. This explains the checks with insufficient funds which were received by defendant.

[2] He mentioned specifically Carlos Armstrong, Vasallo, and Rosado, material suppliers.

remit it to the Company. However, there are two outstanding facts in Bonilla's testimony which were not controverted and are neither improbable nor incompatible with the former ones, and which cannot be arbitrarily discarded in weighing the evidence. It was established that the amount paid by Maldonado was deposited directly in the petty cash fund with Chacker's consent, which explains the reason for failing to remit it to San Juan, and it is evident that the funds were utilized for the benefit of the Corporation and not for defendant's own benefit, which fact is corroborated by the testimony of Marsach, witness for the prosecution.[3]

We have said in *Blanco* v. *People*, 25 P.R.R. 670 (1917), that conversion, as a necessary element of the offense of embezzlement, is the fraudulent appropriation of another's property to one's own use, and that to appropriate to one's own use does not necessarily mean to one's personal advantage. This *animus furandi* entails the intent to deprive the lawful owner of the use and benefit of the property. *People* v. *Holliday*, 53 P.R.R. 338 (1938); *People* v. *Martínez*, 50 P.R.R. 744 (1936). We explained that when the conversion of the property results in the benefit of the owner the element of fraudulent appropriation is absent. *Sparr* v. *People*, 219 P.2d 317 (Col. 1950). And that is the situation in the present case. Notwithstanding the insistence of the representative of the Solicitor General that the evidence did not identify the three hundred dollars as those specifically used to pay the obligations of the Corporation to which the defendant as well as the witness for the prosecution referred, no other result could be attained if the contemporaneousness of the transactions is considered in relation to the date the money was received.

---

[3] We presume that the prosecuting attorney did not know to what use the funds were applied, since it was expressly alleged in the information that Bonilla had used them to his own advantage.

■ If this were not sufficient, as we indicated at the beginning of this opinion, we find ourselves practically in the same position as the trier to weigh the evidence, since the incriminating evidence—which depends exclusively on two isolated statements without further explanation—consists of a written statement. The rest of the evidence for the prosecution, far from impairing, corroborated the essential points of defendant's testimony on the existence of authority to dispose of the petty cash fund and the destination of the supposedly embezzled amount. In view of said circumstances the least we can say is that the evidence gave rise to the existence of a real and well-founded doubt as to the guilt of defendant.

For the reasons stated, the judgment rendered by the Superior Court, Ponce Part, on May 14, 1963 will be reversed, and the acquittal of appellant ordered.

