No. 16,395.

Sparr *v.* The People.

(219 P. [2d] 317)

Decided May 22, 1950.

Messrs. Strang & Loesch, for plaintiff in error.

Mr. JOHN W. METZGER, Attorney General, Mr. RAYMOND B. DANKS, Assistant, for the people.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

BY information filed in the district court for Montrose county, John O. Sparr, to whom reference will hereafter be made as defendant, was charged with embezzlement of one hundred 100-pound sacks of pinto beans, of the value $750.00, the property of O. W. Robinson. The embezzlement allegedly occurred "on or about" January 8, 1949, at which time defendant was warehouse foreman for Robinson. By the second count of the information defendant is charged with the offense of false pretenses. However, at the conclusion of the people's case, this count was dismissed on motion of the district attorney. The jury returned a verdict finding defendant guilty as charged in the first count. Motion for new trial was thereafter filed, argued, and denied, and defendant was sentenced to serve a term not less than one and one-half years nor more than five years in the state penitentiary.

As grounds for reversal defendant urges that the trial court erred in refusing instructions tendered by him and in giving instructions over his objection, and further, that, "The evidence is not legally sufficient to sustain the offense of embezzlement."

The pertinent facts, as shown by the record, are as follows: One O. W. Robinson was engaged in the business. of buying, selling and storing beans and farm produce at Montrose, Colorado. At the time of the alleged offense he was operating a warehouse at Olathe, Colorado. The defendant, thirty-seven years of age, was employed by Robinson as warehouse foreman at Olathe, in which employment he continued until a fire partially destroyed the said warehouse in March, 1949. Defendant's duties were to check produce in and out of the

warehouse and to operate a bean cleaner in connection therewith. He had no authority to sell beans or produce except occasionally in small quantities. It was a usual practice for a farmer to bring his beans to the warehouse where they were cleaned in the bean cleaner and sacked. The farmer then was paid or credited for the number of sacks so cleaned. While the defendant was acting as foreman, approximately 40,000 sacks of beans were cleaned. In the process of cleaning and sacking there was a certain amount of spillage. Ordinarily the warehouse recovered the spillage and the farmer was not paid therefor. The question of spillage enters into the case by reason of defendant's assertion that his employer, Robinson, told him he could have all the spillage, and defendant claimed that the spillage during the course of his employment would amount to one hundred sacks of beans. Robinson denied that the defendant had any claim to the beans recovered from spillage.

On October 12, 1948, defendant went to the Farmers' Union Supply Company, which operated a bean elevator close to the warehouse where defendant was employed, and offered to sell one hundred sacks of pinto beans which he asserted were then stored in the Robinson warehouse. The said company paid defendant $700.00 for these beans; defendant made no accounting to his employer for said money, and appropriated it to his own use. At the time of this purchase the Farmers' Union Supply Company prepared a receipt showing a transfer of one hundred sacks of beans in the Robinson warehouse to the Farmers' Union Supply Company. This receipt was signed by defendant. At no time was there any physical transfer of the one hundred sacks of beans from the Robinson warehouse to the Farmers' Union Supply Company, nor were any particular sacks of beans pointed out or in any manner identified as being the subject matter of the sale. Defendant testified that in consummating the sale he dealt with a Mr. Hawks, manager of the Farmers' Union Supply Company plant.

The following appears in the record of defendant's testimony: "Q. Did Mr. Hawks know that he was buying your beans? A. Yes, sir. Q. Did you so tell him? A. Yes, sir."

On cross-examination of the witness Hawks, called by the people, he testified in part as follows: "Q. You had no idea when you bought these beans, did you, Mr. Hawks, that you were buying anything but Joe Sparr's beans? A. That is right. Q. If they were Robinson's beans, you did not know it? A. No, sir. Q. You were not dealing with Robinson? A. No, sir. Q. The only way that Robinson came into the picture was that so far as you knew and so far as you had been informed these beans were in Robinson's warehouse? A. That is right."

The statute on which the information of this cause is based is section 99, chapter 48, volume 2, '35 C.S.A., the pertinent parts of which are as follows: "Whoever embezzles or fraudulently converts to his own use, or secretes, with intent to embezzle; or whoever fraudulently converts to his own use, money, goods, or property delivered to him, which may be the subject of larceny, or any part thereof, shall be deemed guilty of larceny and punished accordingly."

The sole question which we need determine in disposing of this cause, is whether the evidence, construed in the light most favorable to the prosecution, established the necessary elements of the offense of embezzlement under the statute above quoted. In the case of *Phenneger v. People*, 85 Colo. 442, 276 Pac. 983, we quoted with approval from volume 20, Corpus Juris, page 414, section 4, where the essential elements of the crime of embezzlement are stated as follows: "First, that the thing converted or appropriated is of such a character as to be within the protection of the statute; second, that it belonged to the master or principal, or someone other than accused; third, that it was in the possession of the accused at the time of the conversion,

so that no trespass was committed in taking it; fourth, that the accused occupied the designated fiduciary relation, and that the property came into his possession and was held by him by virtue of his employment or office; fifth, that his dealing with the property constituted a conversion or appropriation of the same; and sixth, that there was a fraudulent intent to deprive the owner of his property."

■ In subjecting the facts here present to the tests contained in the above quotation we are convinced that certain essential elements are wholly lacking. There was no evidence of a conversion of any beans belonging to defendant's employer. The employer was not deprived of any property by any act of defendant's. No beans were removed from Robinson's control in his warehouse. Under the circumstances here shown there can be no conversion of property belonging to Robinson, unless, through the conduct of the defendant, Robinson has become liable to the Farmers' Union Supply Company for one hundred sacks of beans. Under all the evidence contained in this record it is clear that the defendant had no authority whatever to sell beans in the possession of Robinson, whether owned by him or held in the warehouse subject to the order of the owner. It is not even contended that defendant assumed to sell the beans of Robinson, under a representation, express or implied, that he had authority so to do. The defendant assumed to sell his own beans, representing that they were stored in his employer's warehouse. The fact that defendant falsely represented that he owned beans stored in his employer's warehouse and thus used the nature of his employment as a means of lending credence to the representations, does not create a liability upon the employer to make good the loss of one who relied upon such false representations and was damaged thereby.

■ Where a seller of merchandise represents to a buyer that certain goods are his own, and the buyer deals on that basis believing that the goods are the prop-

erty of the seller and not the property of the seller's principal, no liability on the part of the principal arises to make good a loss sustained by the buyer, if the seller fails to deliver the goods as per his contract with the buyer. The rule is stated in 3 C.J.S., page 142, section 232 (a) as follows: "The principal is ordinarily not liable for the independent acts of the agent done in his own name outside the scope of his employment." In the case of *Corn Exchange Bank v. American Dock & Trust Co.*, 149 N.Y. 174, 43 N.E. 915, the court was considering whether a conversion of cotton had been established by the evidence under circumstances somewhat similar to those involved in the case at bar. We quote from the opinion in that case: "The action is for the conversion of cotton claimed to have once belonged to Stone, but he had sold no cotton to the plaintiff. He had simply sold it a certificate which, if valid, entitled the holder thereof to receive from the defendant the cotton described therein. The plaintiff's right to recover was based on the contract embraced in the certificates."

In the case at bar the defendant claimed ownership of goods in himself, and in effect sold a "certificate, which, if valid, entitled the holder thereof to receive" one hundred sacks of beans represented to then be in the warehouse of Robinson. The jury found that defendant did not own the beans in the warehouse. He was without authority to sell beans belonging to others, and the certificate signed and delivered by him did not amount to an exercise of a right of ownership over Robinson's beans to the exclusion of the latter's right. In so far as Robinson was concerned, the document amounted to nothing. Before defendant can legally be found guilty of the embezzlement charged against him, there must be evidence establishing, "that his dealing with the property constituted a conversion or appropriation of the same." *Phenneger v. People, supra.* The proof offered in this connection was that defendant, wholly without authority to bind his employer, in his

own name, signed a document in the nature of a warehouse receipt which had no legal effect as to the ownership or possession of any beans owned by his employer. In order to convict for a criminal conversion, there must be established as an essential element of the crime of embezzlement that there was an unauthorized assumption and exercise of the right of ownership of goods and chattels belonging to another, to the alteration of their condition or the exclusion of the owner's right.

As is apparent from the record in this case, these essential ingredients of a conversion of property by the defendant are not established. Although defendant's conduct, considered from the standpoint of the prosecution, would warrant conviction upon the second count of the information filed against him, the offense of embezzlement is not supported by the evidence, and accordingly the judgment is reversed.