No. 18,639.

JOHN G. GILL *v.* PEOPLE OF THE STATE OF COLORADO.

(339 P. [2d] 1000)

Decided June 1, 1959.

Mr. JOHN F. MCGRATH, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN W. PATTERSON, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error, hereinafter called defendant, was convicted of the crime of embezzlement and was sentenced to the State Penitentiary in Canon City for a term of not less than seven nor more than ten years. He seeks review and reversal of that judgment.

The information contained three counts which charged embezzlement, larceny and larceny by bailee. All related to the same transaction and alleged that between September 15, 1955, and June 15, 1957, the defendant

converted $964.40, the property of the Star-Journal Publishing Corporation. Trial was had to a jury and at the completion of the people's evidence, the defendant submitted a motion to require the prosecution to elect as between the several charges. This motion was granted and thereupon the District Attorney elected to stand on the embezzlement count and moved to dismiss the second and third counts which charged the larceny and larceny by bailee.

The jury returned a verdict of guilty on the first count and judgment and sentence was pronounced on that verdict.

The evidence at the trial disclosed that defendant had been employed by the Star-Journal Corporation during the period from September 15, 1955, until June 15, 1957, as an advertising solicitor. Throughout this period he had regularly called on the Poor Boy Market in Pueblo for the purpose of selling advertising. This latter business was operated by one Bernie Hicks and it was his usual practice to pay cash to the defendant at the time that he gave him an order. The defendant would customarily sign receipts "Star-Journal, per J. Gill." These were dated and would often be written on scrap paper rather than on a printed form.

Over the period in question advertising having a value exceeding $3,800.00 was sold to Hicks by the defendant. Receipts signed by defendant totalling $3,425.65 evidence the cash payments which were made at the time of the several sales. The amounts of the individual items differed but were usually $50.00, $60.00 or $35.00. Some were in the amount of $25.00, others were less and a few were $80.00. In eight instances checks were paid directly to the Star-Journal and in a total of 74 instances there were cash payments to the defendant. The total value of the checks was $405.00 and the total cash payments amounted to $3,425.65. Of this latter amount, $2,465.65 was turned in to the Star-Journal by defendant leaving a balance of $960.00 which had been withheld by him.

These facts were corroborated by the witnesses Bernie A. Hicks and his wife, Edna Hicks, and by the defendant himself, who admitted to both Frank Hoag, Sr., and Frank Hoag, Jr., officers of the Star-Journal Corporation, that he had failed to remit an amount approximating the $960.00 charged in the Information.

The shortage became apparent when Star-Journal collectors called on Hicks, advised him that his account was delinquent and sought to collect the amount which appeared to be owed. The defendant was then called in by Hoag, Sr., and readily admitted the shortage, promised to pay it back at once, stated that he had a check in an amount sufficient to cover this shortage and that he would bring it in the next day. However, he failed to do so and following his disappearance prosecution was commenced.

There is a conflict in the evidence concerning the exact authority of the defendant with respect to collection of money. Both Hoag, Sr., and Hoag, Jr., and the witnesses Neary and Jones, testified that the defendant lacked authority to collect money. Collections were customarily made by employees other than the salesmen. However, Mr. Hoag, Sr., the President of the Star-Journal Publishing Corporation, when asked on cross-examination whether the policy of the newspaper *prohibited* solicitors collecting advertising charges, said:

"A. Yes. Now my answer to that question is this — we have never laid down a policy that no advertising solicitors could collect money for advertising for the reason, suppose a solicitor comes to collect an ad and you want to pay him for that ad and he is authorized in that event to take the money and bring it in and turn it in, which many of them did. Q. Now — A. But those who collected that money turned it in. Q. Now, Mr. Hoag, that, however, is generally what happens, but is it against your rule? A. I don't say it's against the rule, for the reason I just cited. And if a man wants to put an ad in and pay for it, or give it to the solicitor, the solicitor is

authorized to bring it in, turn it in, which Mr. Gill did not do."

Thus, the testimony was somewhat equivocal, it appearing that while defendant was not generally authorized to collect money he was not prohibited from doing so, his job being that of salesman, he nevertheless was authorized to bring in cash paid to him by customers. Also present in the record is the indisputable fact that numerous payments totalling more than $2400.00 were in fact received by Gill and turned in by him and accepted without protest by the Star-Journal.

The several points presented are summarized as follows:

1. That the evidence fails to establish beyond reasonable doubt the existence of the requisite agency relationship whereby defendant was instrusted with money within the contemplation of the embezzlement statute. Defendant in effect claims that since he had no right to possession of the money in the first place the funds which he misappropriated were stolen rather than embezzled and were taken from Hicks rather than the Star-Journal.

2. That the evidence discloses numerous separate and distinct transactions which constitute duplicity in the evidence. The argument is that once the fact of duplicity was apparent defendant was entitled to an order quashing the information. A timely motion was not made at the trial, but defendant requests that the Court notice it nevertheless.

3. That the instructions were misleading and prejudicial.

1. *The sufficiency of the evidence to prove agency and breach of trust.*

As indicated, the position of the defendant is that if he was not expressly authorized to collect monies, he did not convert the property of the Star-Journal and at most he had mere custody of this money rather than possession of it and this would make his offense larceny rather

than embezzlement. The Attorney General takes the position that the law dealing with this question is in such hopeless conflict that he is unable to say whether or not the evidence sustains the conviction. We quote from his brief:

" * * * After studying all of the cases in this jurisdiction and many if not all of the cases from other jurisdictions, this writer came to the conclusion that the law relating to embezzlement is in hopeless and irreconcilable conflict. Professor Austin W. Scott, Jr., is the author of an article appearing in 23 Rocky Mountain Law Review 446 wherein he discusses this conflict and cites many cases. The writer hereof can do no more than refer this Court to that excellent article with which we agree."

The Attorney General recommends that the sounder rule "appears to be" that where a person lawfully obtains property of another, whether he has possession or custody of it, regardless of whether he has authority or not, he should be held accountable as an embezzler.

We are of the opinion that the evidence is sufficient to sustain the element of embezzlement which is here questioned and due to the seeming confusion and conflict we shall outline the reasons for our conclusion. The embezzlement statute involved here (C.R.S. '53, 40-5-16) provides in pertinent part as follows:

"*Embezzlement — what constitutes.* * * * If any officer, agent, clerk or servant of any incorporated company, or if any clerk, agent, servant or apprentice of any person or partnership or association of persons or society; or if any attorney at law, collector or other person who *in any manner receives or collects money* or any other property for the use of or belonging to another, embezzles or fraudulently converts to his own use, or takes, and secretes with intent to embezzle or convert to his own use, without the consent of his company, employer, master or owner of the money or goods collected or received, any money, goods or property of such company,

employer or master, or another, or which is partly the money, goods or property of such company, employer, master or another, and partly the property of such officer, agent, clerk, servant, attorney at law, collector, or other person, *which has come into his possession or under his care in any manner whatsoever,* he shall be deemed guilty of larceny, and punished accordingly; and in a prosecution for such offense it shall be no defense that such officer, agent, clerk, servant, attorney at law, or other person was entitled to a commission out of such money or property, as commission for collecting or receiving or otherwise dealing with the same for and in behalf of the owner thereof or for any other reason." (Emphasis supplied.)

Must a defendant have express authorization from his principal to possess the property in order to satisfy the requirements of the above statute? We conclude that he does not. This statute must be construed in the light of the acknowledged and well known purpose which attended its enactment. Embezzlement was not recognized at common law and the corollary offense, larceny, embraced only those thefts which were accompanied by trespass in the original acquisition and possession. It was first recognized in England when Parliament enacted the statute so as to embrace non-trespass thefts. *Moody v. People,* 65 Colo. 339, 176 P. 476, declares that it was enacted in Colorado with the same object. Judging from the broad language used it must have been the purpose of our Legislature to cover every conceivable unlawful conversion by an agent or servant. Notwithstanding the broad scope of the embezzlement and larceny by bailee statutes, the hairline distinctions which tormented the courts at common law continue to exist.

In the *Scott* article, supra, 23 Rocky Mountain Law Review, 446, referred to by the Attorney General, the author points this up in some detail and in footnote 12 on p. 48 describes the many decisions of this Court

wherein defendant, admittedly guilty of some species of theft, who had been convicted of one offense, has urged (sometimes successfully) that the evidence established his guilt of some other crime.

We do not agree that the distinctions are as vague or that the conflicts are as hopeless as the Attorney General and Professor Scott suggest. Since, however, some confusion does exist, we shall comment on the decisions which are said to be in conflict to the extent that they might effect the instant case.

In *Brown v. People*, 20 Colo. 161, 36 P. 1040, a conviction of larceny was upheld where the defendant was a brakeman for the railroad and converted property which was being transported. The Court, in that case, held that the defendant had *custody* of the property and rejected his argument that he was in *actual possession* and was by reason of this guilty of embezzlement. It is questionable whether Brown even had *custody* other than constructive. A brakeman's duties do not include caring for freight. The result is justified on that narrow ground.

*Lewis v. People*, 109 Colo. 89, 123 P. (2d) 398, upheld a conviction of embezzlement. Here the defendant had formulated the intent to steal *prior* to the time that he came into the possession of the funds which he later converted. It was held that this fact did not prevent the crime from being embezzlement. This holding disposes of part of the argument of defendant in the instant case.

In a later *Lewis case* (Lewis v. People), 114 Colo. 411, 166 P. (2d) 150, the defendant was charged with larceny by bailee growing out of conversion of personal property which had been delivered for safekeeping and return. There also the lack of evidence to prove lawful possession was urged and it was contended that on this account the conversion constituted larceny. But the holding was that defendant had testified at the trial that she had been in lawful possession and that this satisfied any deficiency which might have existed. Therefore, this decision is not an authoritative pronouncement as to the kind

or character of possession which is needed in a non-trespass theft case.

*Sparr v. People,* 122 Colo. 35, 219 P. (2d) 317, is also relied on, but as we view it this decision by contrast demonstrates the sufficiency of the possession or custody of the defendant in the instant case. There the defendant warehouseman was charged with sale of his principal's property. The evidence, however, failed to establish any sale of property. It established a pretended sale pursuant to representations by the defendant that he was selling his own property. The holding that the defendant in that case was not acting in an agency relationship, express, implied or apparent is in no respect confusing in the present analysis.

Much of the confusion seems to have arisen from a quotation which appears in *Phenneger v. People,* 85 Colo. 442, 296 P. 983. The Court in that case upheld a conviction and in the course of its opinion quoted from 20 C.J. 414, Sec. 4, *Embezzlement,* the six elements of the offense. The fourth element in the language of the author of the text reads as follows:

"* *; fourth, that the accused occupied the designated fiduciary relation, and that the property came into his possession and was held by him by virtue of his employment or office;"

■ Defendant argues from this that the agency requirement is satisfied *only* if the accused holds property intrusted to him in the course of a fiduciary relationship and as a result of an express and explicit authorization. Certainly the Phenneger quotation was not intended to undermine or limit the embezzlement statute and to restore the common law confusion. The statute does not require either an express trust or a special authorization. It provides that the offense is punishable where an agent, etc., unlawfully converts property which has "come into his possession or *under his care in any manner whatsoever.*" Effect must be given to the phrase "under his care" which is broader than the term "pos-

session." In the case at bar there is evidence to sustain the legal conclusion that the defendant had at least an implied authority to receive the money on behalf of his employer. This being so, the money was in his possession or under his care within the meaning of C.R.S. 1953, 40-5-16. See 146 A.L.R. 532-596, and see 581.

2. *The question of duplicity of the evidence.*

■ Was it proper for the district attorney to lump the several items into one count of the Information and try them as a single transaction? We think that it was. Where several distinct larcenies or embezzlements are set forth in the same count of an Information the charge (if it appears on the face of the Information) is duplicitous and is subject to being quashed, provided a timely motion is interposed. *Critchfield v. People,* 91 Colo. 127, 13 P. (2d) 270. Where the duplicity is not apparent until the evidence has been presented, the motion to quash may be made during the trial and when the duplicity is disclosed. *Trask v. People,* 35 Colo. 83, 83 P. 1010, *Sweek v. People,* 85 Colo. 479, 277 P. 1. In the *Trask* case the defendant was convicted of larceny by bailee as a result of delivery to him and subsequent conversion by him of various types of personal property on different dates and for different purposes. Objection was there made to the introduction of evidence involving multiple transactions and this objection was overruled. At the close of the People's case, motion was made to quash the Information and this motion was also denied. The Court held that the transactions were distinct, that the evidence disclosed duplicity, and that the defendant's motion to quash should have been granted.

In a subsequent case, *Lewis v. People,* supra, 114 Colo. 411, 418-420, also a multiple transaction larceny by bailee situation, the allegation was that defendant had converted property which had been received in two different bailments. At the completion of the People's case, the defendant moved for a directed verdict and to quash the information. However, the duplicity contention was

rejected on the ground that both of the bailments were for the same identical purpose and thus the conversion of the property bailed constituted a single and not multiple offenses. We quote from the language of the opinion:

"A careful consideration of the factual situation in the Trask case and our decision therein clearly distinguishes that case from the instant one. Here, under the undisputed evidence, defendant procured possession of the prosecuting witness's trunk on July 15, 1942, for the purpose of *safekeeping*. She received goods and chattels belonging to the prosecuting witness on September 2, 1942, *for safekeeping*. These facts defendant admitted and may not now gainsay.

\* \* \*

"As we construe our decision in the Trask case, the motion to quash would have been properly denied notwithstanding the information alleged *four* bailments on *four* different dates, if all had been for the same purpose."

In the case at bar the evidence was such that the Court could have concluded that the peculations were all pursuant to a single criminal impulse in execution of a single fraudulent scheme which constituted but a single embezzlement and could be therefore lumped into one count of the information. See *2 Wharton Criminal Law, 12th Ed.,* 1849, Sec. 1171. The author cites cases recognizing the validity of this rule notwithstanding an extended period during which the property was received and converted. 29 C.J. 684, 710, 727, *Embezzlement,* 136 A.L.R. 948.

██ While it is arguable that the district attorney ought to have proceeded under the six months provision of the larceny statute (which provision is also applicable to embezzlement), we do not believe that it was error in these circumstances to charge it as a single consolidated transaction. If each individual conversion had been made the subject of a separate charge, the defendant undoubtedly would have complained about the unfairness

implicit in proceeding in this manner. The approach used forced the district attorney to stand or fall on the entire series of events as a single transaction and would preclude his proceeding with a second prosecution if he were to be unsuccessful in the first one. *Bustamante v. People,* 136 Colo. 362, 317 P. (2d) 885. In view of the fact that the victim and the mode of operation are identical in every instance, and in view of the fact that the defendant seemingly acted pursuant to the same criminal impulse, felonious purpose and intent, it is our conclusion that the argument concerning the duplicity of the evidence must be rejected.

3. *The issue of misleading instructions.*

Instruction No. 4 sets forth the six elements of embezzlement as these appear in *Phenneger v. People,* supra. It reads (in part):

"You are instructed that before one may be found guilty of the crime of embezzlement, the following elements must be found: * * * "

The elements which are in turn quoted from 20 C.J. 414, Sec. 4, are listed. The entire instruction is taken verbatim from the Phenneger opinion. We believe that the instruction is erroneous in several respects:

*First,* Neither the author of the corpus juris article nor Mr. Justice Alter (who wrote the Phenneger opinion) prepared this abstract statement as an instruction. Judge Alter used it to show that the evidence in that case was sufficient. The several elements of embezzlement vary from state to state, and our statute rather than the text book must be the standard. In fact, some variations between our statute and the general definition are apparent.

*Second,* The instruction is not geared to the case which was being tried. Mere abstract statements of law or excerpts from court opinions generally should not be given as instructions. In the present case the legal conclusions set forth in this instruction were misleading and confusing. See *Lewis v. People,* 99 Colo. 102, 60 P. (2d)

1089, and *Gonzales v. People,* 128 Colo. 522, 264 P. (2d) 508; also *Harris v. People,* 32 Colo. 211, 75 P. 427, wherein the Court said:

"It is wrong for a court to instruct as to the law in the absence of facts to which it is rightly applicable, and it is just as erroneous to state abstract propositions of law, each applicable to a different state of facts, follow it up by applying one doctrine to a given hypothetical case, and say nothing to the jury about the application of the other and opposing doctrines. Such a method of advising a jury must result in injury. * * * "

█ *Third,* The term "found" was used. This is not sufficient in a criminal case. The instruction failed to advise the jury that they were required to find and conclude *from the evidence beyond a reasonable doubt* that the several elements were established. In view of the fact that the general instruction on presumption of innocence, burden of proof, and reasonable doubt was in an obscure place toward the end of the instructions, this deficiency was palpably erroneous. See *Graham v. People,* 95 Colo. 544, 38 P. (2d) 87, and *Pribble v. People,* 49 Colo. 210, 112 P. 220, both of which demonstrate the necessity for instructions setting forth the reasonable doubt standard.

Instruction No. 5 reads:

"The Court instructs the jury that, when one wrongfully and intentionally misappropriates the money of another lawfully in his possession to his own use or the use of another, the offense of embezzlement is complete so that the fact that he at the same time intends subsequently to return the money or to make restitution to its rightful owner does not relieve his wrongful act of its criminal nature, excuse him, or make his offense any the less embezzlement."

The above abstract statement of the law is misleading, ambiguous and contradictory. After outlining the several elements of the offense, in Instruction No. 4, the jury is told that the offense is complete where one converts fol-

414

lowing a lawful possession. No doubt it was merely intended to advise the jury that restitution is not a defense, but its ambiguous form allows the suggested meaning to be inferred.

Instruction No. 6 reads:

"The Court instructs the jury that the laws of the State of Colorado do not require that an employee or agent have the specific authority of his employer or principal to collect or receive money in order to satisfy the element of possession."

This is also erroneous as an abstract statement of law which does not require proof of the element in question beyond a reasonable doubt. It was also unduly repetitious, the court having read the statute to the jury and having also covered the subject in Instruction No. 4.

■ Concluding as we do that the instructions upon which we have commented were misleading, erroneous, and prejudicial, we hold that the cause must be reversed on this account.

4. *The comments and conclusions of the prosecuting witness.*

The statements of the witness Frank Hoag, Sr., concerning the defendant's guilt and bad character constitute prejudicial error, and must be noticed notwithstanding that counsel has not assigned error on this ground. The offensive testimony is quoted (all emphasis supplied):

"Q. Now do you know whether or not Bernie A. Hicks and Edna I. Hicks, doing business as Poor Boy, were advertising customers of The Star-Journal Publishing Corporation? A. He collected money from the Poor Boy account *and didn't turn it in.*"

Another example is the following:

"Q. Did you ever talk to John Gill, Mr. Hoag, about his accounts with the Poor Boy? A. Not until this *apparent embezzlement developed.*"

And at another place in the record he said:

" * * * He couldn't produce the money from the auto-

mobile; he couldn't produce the money from the loan he was going to make. Then, I sent Paul Milford *out to the house and this woman that lived there — that is, she was not his wife, just living with him —*

"MR. McGRATH: No, Your Honor, this is prejudicial, and I will ask you to strike those remarks and admonish the jury to disregard those remarks."

The Court struck this remark and the witness took issue with the ruling:

"THE WITNESS: I can't understand this ruling. This is germane to how Gill happened to *skip, run away, and not produce any of the money; he didn't keep his promise.*"

His statement about short checks reads:

" * * * but, when I got the information Mr. Gill was skipped out, he couldn't be located, and the only way we could keep track of him was from the short checks that commenced to come in from the various banks throughout the country."

■ In *Wood v. People,* 60 Colo. 211, 213, 151 P. 941, the Court held that it was reversible error to receive testimony concerning an illicit relationship with the sister of a co-defendant and said in part:

"The minds of the jurors must not be poisoned and prejudiced against the prisoner by receiving evidence of the character of that here in question, unless the proof of the case requires it."

*Martin v. People,* 114 Colo. 120, 162 P. (2d) 597, holds that evidence showing the bad character of the accused is immaterial and inadmissible. The Court, in the *Martin case,* quoted with approval from *Heller v. People,* 22 Colo. 11, 43 P. 124, which reversed a conviction based upon the failure of the trial judge to reprimand counsel because of improper remarks. Mr. Justice Hilliard, in the Martin case, pointed out that such comments create an atmosphere of unfairness and prejudice. On this it was said:

" * * * The evil which attends unfair atmosphere de-

veloped in a court room, is illustrated in many situations. The following cases are instances: *Leech v. People,* 112 Colo. 120, 146 P. (2d) 346; *Paine v. People,* 106 Colo. 258, 103 P. (2d) 686; *Webster v. Commonwealth,* 223 Ky. 369, 3 S.W. (2d) 754; *People v. Wells,* 100 Cal. 459, 34 Pac.. 1078.

"Measured by any rule of justice, as our study of the record moves us to say, defendant was not accorded a fair trial."

See also *Brown v. People,* 130 Colo. 77, 273 P. (2d) 128, wherein a judgment imposing the death penalty in a murder case was reversed by reason of the improper statements of a witness and improper cross-examination by the district attorney.

█ It is fundamental that a defendant has a right to be tried on the offense charged in the information and no other. It is basic in our system of trials that extraneous prejudicial matter tending to disparage the character of the accused is inadmissible.

Perhaps a single instance of impropriety such as that shown would not warrant reversal. However, the cumulative effect which results from repeated instances produces an atmosphere of unfairness and prejudice. The atmosphere of guilt resulting from these several voluntary comments and conclusions is incompatible with a fair and impartial trial.

The case is not reversed on this ground because the point was not assigned as error. We have nevertheless noticed and called attention to it so that on a retrial the witness can be instructed at the very outset to respond specifically to the questions propounded.

For error in giving the challenged instructions, the judgment is reversed and the cause remanded for a new trial consistent with the views herein expressed.

Mr. Justice Sutton not participating.