No. 24228.

JOHN A. HUCAL *v*. THE PEOPLE OF THE STATE OF COLORADO.
(493 P.2d 23)

Decided December 20, 1971. Rehearing denied February 14, 1972.

530

John L. Springer, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, George E. DeRoos, Assistant, Michael T. Haley, Assistant, Arthur P. Roy, Assistant, for defendant in error.

*En Banc.*

Francis W. Jamison, County Judge,* retired, delivered the opinion of the Court.

Plaintiff in error, hereafter referred to as defendant or Hucal, was convicted by a jury of theft, 1967 Perm. Supp., C.R.S. 1963, 40-5-2. He claims error in the trial court's refusal to direct a judgment of acquittal. For the purpose of this appeal, Hucal concedes that the prosecution's evidence should be assumed to be true.

The prosecution's evidence was as follows:

In June of 1968, the defendant and one Norman K. Davis were both employed by the City and County of Denver in the Department of Revenue, defendant in the Sales and Use Tax Division and Davis as a collector in the Delinquent Personal Property Tax Section.

On June 13, 1968, a check in the amount of $1,000 drawn by Air Rentals, Incorporated, a Denver business, and made payable to "The Manager of Revenue — City and County of Denver," was forwarded to the City and County of Denver · for partial payment of sales taxes which were owed to the City by Air Rentals. The check was received in the Sales and Use Tax Division by the defendant as part of his regular duties. He credited Air Rental's account with having paid $1,000 of the amount owed, but instead of having the check deposited in the sales tax account as his duties required, he exchanged it on June 28, 1968, at the First National Bank of Denver for a cashier's check in the amount of $1,000 payable

to "The Manager of Revenue — City and County of Denver."

The cashier's check was then given to Davis who used it on August 12, 1968, to pay $1,000 of the personal property taxes due the City from Barney Gross Supply Co. Davis later informed Gross that $1,000 of his personal property taxes had been paid by a finance company and Gross should pay the $1,000 plus interest to the finance company in installments. It appeared that the finance company was operated by the defendant and Davis. Gross never paid the $1,000 to the finance company.

I.

The defendant contends that the above facts fail to show the crime of theft from the City and County of Denver. Simply stated, his argument is that a $1,000 check was sent to the City and ultimately the City had $1,000 deposited in the City Treasury which was the proceeds from that $1,000 check. He claims that if Air Rental's tax is not now paid, perhaps, theft has been committed from Air Rentals; or, perhaps, there was an attempted fraud committed against Barney Gross. But, the charge is theft from the City and County of Denver and the City has not suffered a loss of any money. Hucal argues that there was no proof that he wrongfully appropriated any money or property belonging to the City.

The exact language of the information was that:

". . . on August 12, 1968, . . . John A. Hucal did then and there feloniously, knowingly, willfully and unlawfully commit the crime of theft by fraud and deceit by taking money from the DEPARTMENT OF REVENUE OF THE CITY AND COUNTY OF DENVER, COLORADO, A MUNICIPAL CORPORATION, with the intent to permanently deprive said victim of the use and benefit of the said property having the value of more than one hundred dollars ($100.00) . . . ."

Defendant cites the case of *Sparr v. People,* 122 Colo. 35, 219 P.2d 317 (1949) as authority for his argument that no theft to the City has been committed. In that case

Sparr was employed by a warehouseman. Sparr sold 100 sacks of beans belonging to his employer to another for $700 and a receipt was made out showing that 100 sacks of beans in the employer's warehouse belonged to the purchaser. No beans were ever transferred from the employer to the purchaser. This court correctly held that there had been no wrongful appropriation of any property belonging to the employer. Sparr's actions had not deprived the employer of his 100 sacks of beans. Hence, since there was no property of the employer transferred to the purchaser, there was no embezzlement from the employer.

It is true that the new theft statute (1967 Perm. Supp., C.R.S. 1963, 40-5-2) did not create any new crimes in Colorado. The intent of the legislature is clear that the purpose of the theft statute is to remove "distinctions and technicalities which previously existed in the pleading and proof of such (acquisition) crimes, 1967 Perm. Supp., C.R.S. 1963, 40-5-2(4). Clearly, the rule announced in *Sparr* above is still applicable under the present theft statute even though it was decided under the old Colorado embezzlement statute. There can be no theft under our statute without wrongful appropriation of another's property, 1967 Perm. Supp., C.R.S. 1963, 40-5-2. For a full theoretical and historical treatment of this rule, *see Perkins, Criminal Law,* 189, 272-73 (1957).

Can *Sparr* be distinguished from the case at hand? Had Sparr delivered the beans from his employer's warehouse to his purchaser, the crime of embezzlement would have been complete for then there would have been a wrongful appropriation of the employer's beans. This is precisely what happened in the present case.

When Air Rentals sent the $1,000 check to the City and County of Denver and it was received by Denver's employee, the defendant, whose property was it? The check and money it represented belonged to the City and County of Denver. Hucal had possession of his employer's property. He was required to deposit it in his

employer's account. This he did not do. Instead of turning over the check to the cashier for deposit in the sales tax account at the First National Bank of Denver, as the duties of his office required, defendant exchanged it for a cashier's check and gave it to a third person, Davis. The exchange of the original $1,000 check for the cashier's check enabled the defendant to use the property for his own purposes and deprived the City of its use when the cashier's check was turned over to Davis. The theft occurred when Hucal gave Davis property (the cashier's check) belonging to the City. It has long been the law in Colorado that negotiation of a check is equivalent to receipt of money, and failure to pay over the money collected for another is a "conversion" of it. *McGuire v. People,* 83 Colo. 154, 262 P. 1015; *Briggs v. People,* 76 Colo. 591, 233 P. 836.

■ The defendant argues that there was no permanent deprivation of the use or benefit of the property belonging to the City. Ultimately, the $1,000 went into the City treasury. Theft does not require permanent deprivation of property; once the wrongful appropriation occurs, the statute requires co-existent *intent* to permanently deprive of use and benefit:

"(1) (a) Any person commits theft when he knowingly:
"(b) (i) Obtains or exerts unauthorized control over anything of value of another; . . . and
"(c) (i) Intends to deprive another permanently of the use or benefit of the thing of value; . . ." 1967 Perm. Supp., C.R.S. 1963, 40-5-2.

■ From the defendant's action of (1) wrongfully appropriating the check, (2) converting it into a cashier's check, and (3) giving it to Davis, the jury would properly infer intent. *Thorp v. People,* 110 Colo. 7, 129 P.2d 296 (1942); *Briggs v. People,* 76 Colo. 591, 233 P. 836 (1925).

It makes no difference that ultimately the City received the $1,000. If the rule were that there had to be a permanent deprivation of property before a conviction could be sustained, every time stolen property was recovered

and returned to its true owner the thief would have to be acquitted. Such a rule would be inane.

## II.

The defendant further contends that the theft statute itself specifically exempts prosecution under it for the crime of embezzlement of public moneys. If it doesn't, the theft statute is a general statute and since there is a specific statute concerning embezzlement of public moneys, the defendant cannot be convicted under the general statute.

1967 Perm. Supp., C.R.S. 1963, 40-5-2(4) reads in part as follows:

"Whenever any law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public moneys), false pretenses, confidence game or shoplifting, said law shall be interpreted as if the word 'theft' were substituted therefor; and in the enactment of this section, it is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes, thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes."

It is clear that the above paragraph is a short-cut method of substituting the word "theft" in every statute in which the words "larceny, stealing, embezzlement (except embezzlement of public moneys), false pretenses, confidence game, or shoplifting" are used, without having to list all the statutes affected. This technique avoids rendering inoperative, by inadvertence, any statute containing one of the enumerated words. The legislature repealed all the specific criminal statutes concerning the specific crimes listed above, but enacted a specific criminal statute concerning embezzlement of public moneys, 1967 Perm. Supp., C.R.S. 1963, 40-5-16. Hence, the reason for not substituting "theft" for "embezzlement of public moneys." The theft statute was clearly meant to encompass generally acquisition type crimes and just because the word "theft" should not be substituted for

"embezzlement of public moneys" is no indication of a limitation on the general theft statute. Clearly, the crime of embezzlement is included.

 Perhaps, the defendant here could have been prosecuted under 1967 Perm. Supp., C.R.S. 1963, 40-5-16, as well as 40-5-2, but just because his one criminal transaction could have been prosecuted under either statute is no reason to conclude that he should only be prosecuted under the specific statute. The argument that a specific statute necessarily precludes prosecution under a general statute has been repudiated too often to warrant an extended discussion. Suffice to say that unless the legislative intent is clearly shown to be otherwise, enactment of a specific criminal statute does not preclude prosecution under a general criminal statute, but rather allows the single criminal transaction to be prosecuted under either statute, *Frink v. People,* 103 Colo. 172, 83 P.2d 774 (1938); *Kollenberger v. People,* 9 Colo. 233, 11 P. 101 (1886); *see also* 2 Sutherland, *Statutory Construction* § 5204 (3rd Ed.).

Judgment affirmed.

RONALD J. HARDESTY, District Judge*, participating.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE GROVES not participating.

MR. JUSTICE DAY dissenting.

---

*Judges sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.