**Charles Nolan EVANS, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 83SC451.**

Supreme Court of Colorado,
En Banc.

Sept. 30, 1985.

David F. Vela, Colorado State Public Defender, Terri L. Brake and Shelley Gilman, Sp. Deputy State Public Defenders, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes Horton, Asst. Atty. Gen., Enforcement Section, Denver, for respondent.

LOHR, Justice.

We granted certiorari to review the Colorado Court of Appeals' unpublished opinion in *People v. Evans*, No. 81CA1242. At issue in this criminal case is the trial court's instruction on the affirmative defense of entrapment. The court of appeals rejected the defendant's challenge to the instruction, holding that the addition to CJI-Crim. 7:10 of language from our opinion in *Bailey v. People*, 630 P.2d 1062 (Colo.1981), interpreting the entrapment defense was not misleading, confusing, or an incorrect statement of the law. We reverse the judgment of the court of appeals.

In 1980, Charles Evans and his girlfriend, Dierdre Dooley, were charged with dispensing a dangerous drug, possession of a dangerous drug with intent to dispense, and conspiracy to dispense a dangerous drug. §§ 12–22–404 and 12–22–412, 5 C.R.S. (1978); § 18–2–201, 8 C.R.S. (1978).[1] Dooley pleaded guilty to lesser offenses, but Evans was tried to a jury and convicted on the charges originally filed. He was sentenced to concurrent terms of imprisonment of two years for conspiracy and three years for each of the other offenses. At his trial, Evans unsuccessfully contended that the procedure that led to his arrest and conviction constituted entrapment.

Evans was arrested in Steamboat Springs, Colorado, following an undercover

---

1. Effective July 1, 1981, portions of title 12, 5 C.R.S. (1978), concerning dangerous drugs were repealed. Offenses relating to controlled substances are now codified in article 18 of title 18, 8 C.R.S. (1978).

investigation conducted by two federal drug enforcement agents, Larry Lamberson and Richard Barrett, working with Tony Cornelius, a paid informant. Dooley and Evans testified that in early April of 1980, they were living in a house in the Steamboat Springs area with a roommate, Tom Piscotti. Dooley worked as a cocktail waitress in a local bar, and Evans often spent evenings there. According to Dooley and Evans, Lamberson and Cornelius began to frequent the bar and on several occasions asked Dooley if she knew where they could purchase drugs. Dooley responded that she did not.

On April 5, 1980, the heat was turned off in the house shared by Dooley, Evans and Piscotti because they were unable to pay their gas bill. Evans had a bad cold. Dooley testified that on the next day, April 6, she mentioned to Lamberson and Cornelius in the bar that her residence lacked heat, and Lamberson suggested that if Dooley were to sell him some LSD for his brother in Texas, she could make some money to pay her gas bill. That evening, when Evans arrived at the bar, Dooley introduced him to Lamberson, and Lamberson repeated his proposal, offering to lend Evans his truck and provide the front money if Evans would sell him 1,000 "hits" of LSD (squares of paper saturated with the drug). According to Evans and Dooley, Evans refused the offer, but that did not deter Lamberson, who called them at home between 2:30 and 3:30 a.m. stating that he still wished to purchase the drugs. Evans told Lamberson never to call him again in the middle of the night.

Lamberson phoned Evans' home more than once on April 7, leaving messages for him with Piscotti. On April 8, Dooley and Evans began to argue about whether to accept Lamberson's proposal. According to Dooley, she wanted Evans to get the drugs for Lamberson because the gas was turned off, the house was cold, and she was afraid her exotic pet bird would die. Evans was reluctant, but eventually agreed to try to obtain the drugs.

On April 8, Evans met with Lamberson, who gave him $1,500 in cash. Evans and Dooley drove directly to the gas company and used $238 of the money to pay their bill. They then drove to Boulder. There, Dooley waited in a bar while Evans, who had spent one semester as a student in Boulder, went to several other bars until he found someone who agreed to arrange a sale of LSD. Evans bought approximately 950 hits of LSD. He testified that he knew what the drug looked like because he had seen it in high school, but had never before sold or used LSD. He did admit using cocaine. Evans returned with Dooley to Steamboat Springs that night and gave the LSD to Lamberson the next day, April 9. Evans, Dooley and Piscotti were subsequently arrested.

Agent Lamberson's description of how the events transpired differed significantly. Lamberson testified that Evans had agreed to obtain the drugs when the two met in the bar on April 6. Evans told Lamberson that he had been selling drugs and had bought LSD from persons in Boulder many times before. Lamberson did not recall ever calling Evans at home. In addition, Lamberson testified that when Evans delivered the LSD to Lamberson, Evans noted that he was fifty hits short of the agreed 1,000 and offered to compensate for the deficiency on a future transaction.

The controversy at trial thus concerned whether Evans had been entrapped by the actions of the federal Drug Enforcement Administration agents. The trial court gave the following instruction on the defense of entrapment:

It is an affirmative defense to the crimes of dispensing a dangerous drug, possession of a dangerous drug with intent to dispense, and conspiracy to dispense a dangerous drug, that the defendant engaged in the prescribed [sic] conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain such evidence were such as to create a sub-

stantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used.

You are instructed that the defendant's predisposition to commit the crime, rather than the conduct of the police, is the dispositive factor in determining whether entrapment has occurred. Merely providing an opportunity for a person to violate the law in [sic] not entrapment. And this is true even when the agent or police initiates the contact for the purchase of the drugs.

The first paragraph of this instruction, patterned after CJI-Crim. 7:10, is essentially the same as the proposed instruction submitted to the trial court by the defense.[2] It is the second paragraph, taken from *Bailey v. People,* 630 P.2d 1062 (Colo.1981), to which Evans has objected, because, he argues, it removes an element of the offense that the prosecution would otherwise be required to prove. By stating that "the defendant's predisposition ... is the dispositive factor," Evans contends that the instruction allowed the jurors to ignore the conduct of law enforcement officials. In a short opinion, the court of appeals rejected the defendant's arguments and concluded that the instruction was not erroneous, misleading or confusing. We disagree with this holding.

The defense of entrapment is defined in section 18–1–709, 8 C.R.S. (1978), which states:

The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used.

In *Bailey v. People,* 630 P.2d 1062 (Colo. 1981), we determined that Colorado's entrapment statute created a subjective test, not an objective one. An objective test for entrapment would focus on the propriety of methods used by police as measured by generalized standards, and not on the character or propensities of an individual defendant. In contrast, a subjective test is concerned with the state of mind of a particular defendant, and does not set general standards for police conduct. 630 P.2d at 1065 n. 5. Consistent with this latter test, we held that the expression "a person" in section 18–1–709 refers to the defendant charged in the particular case under consideration. In concluding that the Colorado statute, like the New York statute upon which it was patterned, enacted a subjective test of entrapment, we noted that "[t]he defendant's predisposition to commit the crime, rather than the conduct of the government agent, remains the dispositive

---

2. CJI-Crim. 7:10 states:

It is an affirmative defense to the crime of (insert name of crime) that the defendant engaged in the prohibited conduct:

(1) because he was induced to do so by a law enforcement official [or other person acting under the direction of a law enforcement official] who was seeking to obtain evidence for the purpose of prosecution, and

(2) the methods used to obtain that evidence created a substantial risk that the prohibited acts would be committed by a person who would not have conceived of, or engaged in that conduct without such inducement.

Merely providing a person an opportunity to commit an offense is not entrapment, even though representations or inducements calculated to overcome the defendant's fear of detection are used.

We believe this instruction should be revised to reflect our construction of the entrapment statute in *Bailey v. People. See* n. 6, below.

factor in determining whether entrapment has occurred." 630 P.2d at 1067.[3] It is this language that the trial court incorporated in its instruction to the jury concerning Evans' defense of entrapment. Although this quote is a correct statement within the context in which it appears in the *Bailey* opinion, when taken out of context and used in a jury instruction, it is misleading.

■ Based upon a reading of the entrapment statute, together with our holding in *Bailey v. People* that the term "a person" in that statute refers to the defendant, we determine that the entrapment defense consists of the following elements: (1) the defendant must be a person who, but for the inducement offered, would not have conceived of or engaged in conduct of the sort induced, (2) the defendant must in fact have engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and not as a result of the defendant's own predisposition, (3) the methods used to obtain such evidence must have been such as to create a substantial risk that this particular defendant would engage in the sort of conduct induced, and (4) the methods used must have been more persuasive than merely affording the defendant an opportunity to commit an offense, even when such an opportunity was coupled with representations or inducements calculated to overcome the defendant's fear of detection. Thus, the existence of any predisposition on the part of the defendant must be determined first, then the extent of any such predisposition must be considered in relation to the character of the inducements to determine whether the second and third elements have been satisfied. That is, in considering element 2, it is necessary that the inducements, and not any predisposition of the defendant, in fact caused the defendant's prohibited conduct. Resolution of this issue requires examination of both the defendant's susceptibility to engaging in criminal activity and the nature of the inducements used to overcome any reluctance of the defendant to commit the crime. Evaluation of element 3 requires that the nature of the inducements be considered in relation to the degree of the defendant's predisposition to determine whether the methods used created a substantial risk that the defendant would engage in the proscribed conduct.

■ The carefully crafted requirements of the entrapment statute are swept aside by the instruction adopted by the trial court, which selectively excerpted the statement from *Bailey* that "the defendant's predisposition to commit the crime, rather than the conduct of the [police, is] the *dispositive* factor." 630 P.2d at 1067 (emphasis added). Moreover, this language, found in the second paragraph of the instruction, contradicts that part of the first paragraph requiring the jury to consider whether "the methods used to obtain such evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced." In essence, the court invited the jury to consider the police conduct and then told them to ignore it. Such contradictory directions, even if the instructions were otherwise correct, were clearly not envisioned by the entrapment statute, CJI-Crim. 7:10, or our decision in *Bailey v. People*.[4]

**3.** In *Bailey v. People* we noted that circumstances can arise where the conduct of law enforcement officers that induces criminal activity is so outrageous as to violate fundamental standards of due process of law and thus to vitiate any conviction obtained by such official conduct. 630 P.2d at 1068. The defendant does not assert that the police conduct in the present case violated constitutional due process standards.

**4.** In addition, the defendant argues that the jury may have been misled by the peculiar wording of the entrapment instruction. In the second paragraph, the court stated, "[y]ou are instructed that the defendant's predisposition to commit the crime ... is the dispositive factor." This, the defendant contends, makes it sound as though the court had already assumed a predisposition on the part of the defendant. According to Evans, this interpretation is reinforced by

■ Moreover, the defendant is correct in asserting that a trial court's use of an excerpt from an opinion in an instruction is generally an unwise practice. In *Cohen v. People,* 106 Colo. 245, 103 P.2d 479 (1940), we explained that statements taken from opinions do not necessarily translate with clarity into jury instructions because opinions and instructions have very different purposes.

> [L]anguage used in an opinion pertinent to the issues and the determined facts in that case may be a proper expression of the law as related to those facts and issues, and pertinent to a decision of the case, and yet may not be sufficiently general, clear, or accurate to serve as a satisfactory or full instruction to a jury.

106 Colo. at 247, 103 P.2d at 480.[5]

In the case now before us, the trial court excerpted a phrase from an opinion which was at best misleading standing alone because it did not accurately summarize the holding in *Bailey,* and which made the jury instruction internally inconsistent because the added phrase conflicted with other language within the instruction. We therefore conclude that the trial court's instruction on entrapment was in error.

■ The prosecution argues that even if the instruction was erroneous, the error must be considered harmless. We disagree. Once the defendant has presented credible evidence on the issue of entrapment, the prosecution has the burden of proving beyond a reasonable doubt that no entrapment occurred. *Bailey v. People,*

630 P.2d at 1065. Even though in this case the trial court noted this burden in a separate instruction, the contradictory language of the entrapment instruction may have misled the jury into believing that the People needed to prove only that the defendant had some predisposition to commit the crime charged.

This would be contrary to the intent of the entrapment statute. Although it would be possible for the prosecution to negate the defendant's entrapment defense by disproving one of the elements, showing that the defendant had some predisposition to criminal conduct would not be sufficient to achieve this result. Under Colorado's entrapment statute predisposition and inducement are inextricably interwoven within the first three elements of the defense. Each of the first three elements of the defense requires joint consideration of the nature of the inducement and the extent of the defendant's predisposition. The only situation in which the prosecution could rely solely on the defendant's predisposition would occur if the prosecution were able to prove that the defendant would have committed the crime even if the police officers had offered no inducement more persuasive than merely affording the defendant an opportunity to commit the crime. Any degree of predisposition short of this would require the extent of predisposition to be measured against the extent of the inducement provided. It is possible that the instruction in this case led the jury to believe that it was enough for the prosecution to prove that the defendant had

---

the fact that the court did not define the word "predisposition," or clearly state that it was the jury's function to determine the existence of predisposition. Without adequate definition of terms, or guidance concerning the range of issues they were to decide, we cannot say with confidence that the jury was not misled or confused as well by this portion of the trial court's instruction.

**5.** *See also Gill v. People,* 139 Colo. 401, 339 P.2d 1000 (1959) (conviction reversed where embezzlement instruction was taken verbatim from an opinion); *.People v. Zuniga,* 631 P.2d 1157 (Colo. App.1981) (trial court's addition of phrase from opinion to statutory definition in instruction was reversible error). That language from

opinions should not be used indiscriminately to embellish jury instructions is a well-established rule not only in Colorado, but also in several other jurisdictions. *See, e.g., Spence v. State,* 429 N.E.2d 214 (Ind.1981) (language used in state supreme court opinions is not necessarily proper in jury instructions); *State v. Freeman,* 473 A.2d 1149 (R.I.1984) (language from appellate opinions is not always appropriate for use in the communication of legal concepts to jurors); *Bales v. State,* 585 S.W.2d 610 (Tenn.1979) (opinions are meant to explain the legal and factual basis for a particular decision and therefore may contain too much "legalese" and argument to be suitable for jury instructions).

some predisposition to commit the crime. Absent a more detailed explanation of the nature of the required predisposition, there is a very real likelihood that the jury rejected the entrapment defense on legally insufficient grounds. Such an interpretation would relieve the prosecution of the burden of proving each element of an offense, and would be violative of the defendant's Fourteenth Amendment rights. *See Francis v. Franklin,* — U.S. —, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Where, as here, the asserted error is constitutional in nature, reversal is required unless the court is convinced that the error was harmless beyond a reasonable doubt. *Graham v. People,* 705 P.2d 505 (Colo.1985); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); *People v. Myrick,* 638 P.2d 34 (Colo.1981), *Germany v. People,* 198 Colo. 337, 599 P.2d 904 (1979).

The testimony of Evans and Dooley was sufficient to constitute evidence of each element of the defense of entrapment if believed by the jury. We cannot say that the jury could not have considered this evidence credible. Under the facts of this case, we are not convinced beyond a reasonable doubt that had the jury been properly instructed they would not have acquitted the defendant based on the affirmative defense of entrapment.[6] The judgment of the court of appeals is therefore reversed.

---

**6.** In light of our decision in *Bailey v. People,* the following instruction should be used in the future where entrapment is at issue:

It is an affirmative defense to the crime of [insert name of crime] that the defendant engaged in the proscribed conduct because he was entrapped. The defendant was entrapped if:

(1) the defendant is a person who, but for the inducement offered, would not have conceived of or engaged in conduct of the sort induced,

(2) the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and not as a result of the defendant's own predisposition,

(3) the methods used to obtain such evidence were such as to create a substantial risk that this particular defendant would engage in the sort of conduct induced, *and*

(4) the methods used were more persuasive than merely affording the defendant an opportunity to commit an offense, even if such an opportunity was coupled with representations or inducements calculated to overcome the defendant's fear of detection.

This instruction should be coupled with a burden of proof instruction patterned after CJI-Crim. 7:01.