The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 9, 2020

## 2020COA63

**No. 16CA1109, *People v. Espinosa* — Criminal Law — Jury Instructions; Crimes — Unlawful Sexual Behavior — Sexual Assault on a Child by One in a Position of Trust — Definitions — Sexual Contact**

A division of the court of appeals addresses, for the first time in a jury instruction context, the definition of sexual abuse as that term is used in the statutory definition of unlawful sexual contact in section 18-3-401(4)(a), C.R.S. 2019. Because the division concludes that the trial court's definition was potentially misleading, it reverses the defendant's conviction and remands for a new trial.

COLORADO COURT OF APPEALS     **2020COA63**

Court of Appeals No. 16CA1109
El Paso County District Court No. 14CR5536
Honorable Richard V. Hall, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Alberto Gil Espinosa,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE TOW
Terry and Yun, JJ., concur

Announced April 9, 2020

Philip J. Weiser, Attorney General, Rebecca A. Adams, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dayna Vise, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Alberto Gil Espinosa, appeals his judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child by one in a position of trust.  For the first time in the context of jury instructions, we address the definition of "sexual abuse" as that term is used to define "sexual contact."  § 18-3-401(4)(a), C.R.S. 2019.  Because the trial court incorrectly instructed the jury that defendant's motivation was not relevant in determining whether an act constituted sexual abuse, we reverse and remand for a new trial.

## I.     Background

¶ 2     Espinosa was charged with having sexual contact with his then-fifteen-year-old daughter, A.E.  According to the prosecution's evidence, A.E. spent the night at Espinosa's apartment in October 2014.  Early the next morning, Espinosa attempted to wake A.E., first by stroking her hair, and then by kissing her cheek, forehead, and lips.  A.E. turned over to avoid Espinosa, pretending to be asleep.  Espinosa then nudged A.E.'s shoulder, apparently to see if she was awake.  When A.E. did not respond, Espinosa reached his hands under A.E.'s blanket and felt her breasts.  A.E. opened her eyes, at which point Espinosa removed his hands and asked her if

1

she wanted to go to work with him as they had planned. A.E. told him no, and Espinosa left. A.E. vomited and began crying, then called her mother to pick her up. A.E. was still crying when her mother arrived.

¶ 3 At the suggestion of the police, A.E. later called her father to try to get him to confess to the assault. Espinosa maintained that he had simply been trying to wake her up, but he also indicated that he was curious and concerned about her development, as A.E.'s mother had required a breast reduction surgery.

¶ 4 In December 2014, Espinosa was arrested and charged with sexual assault on a child by one in a position of trust. Following a jury trial, Espinosa was convicted as charged. The trial court sentenced Espinosa to a term of ten years to life on sex offender intensive supervised probation.

## II. The Trial Court Erroneously Instructed the Jury

¶ 5 Espinosa argues that the trial court erred by improperly instructing the jury as to the definition of "sexual abuse." We agree.

## A. Additional Facts

¶ 6    To convict Espinosa, the prosecution had to prove that he knowingly subjected A.E. to "sexual contact." § 18-3-405.3(1), C.R.S. 2019. As relevant here, "sexual contact" is defined as "[t]he knowing touching of the victim's intimate parts by the actor . . . or the knowing touching of the clothing covering the immediate area of the victim's . . . intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse." § 18-3-401(4)(a).

¶ 7    During deliberations, the jury asked the trial court to provide the legal definition of "abuse" in the context of the term "sexual contact." The court agreed, at defense counsel's request, to instruct the jury that the word "sexual" modifies the word "abuse," consistent with *People v. Lovato*, 2014 COA 113. The parties and the court then discussed at length how to define "sexual abuse" for the jury. While the trial court asserted that *Lovato* provided the applicable definition, defense counsel was wary of the particular language in *Lovato* on which the trial court was relying. Defense counsel objected that, contrary to the trial court's conclusion, *Lovato* did not define "abuse" as encompassing emotional as well as

physical abuse, and it did not determine that the actor's motivation was irrelevant in determining whether abuse is sexual or not. Ultimately, drawing language from *Lovato*, the court answered the jury's question by providing the following written instruction defining "sexual abuse":

> First, the word "sexual" modifies the term "abuse."
>
> Second, sexual abuse involves behavior done with an intent to cause pain, injury, or discomfort of a serious nature to a victim's "intimate parts." The pain, injury, or discomfort can be either of a physical or an emotional nature. The term "abuse" imports an intent to injure or hurt badly, not lewdness. It is the nature of the act that renders the abuse "sexual" and not the motivation of the perpetrator.

### B. Standard of Review and Applicable Law

¶ 8 The trial court has a duty to correctly instruct the jury on all matters of law. *People v. Bryant*, 2018 COA 53, ¶ 83. And "[i]f a jury inquires about the meaning of a particular instruction, the court should provide a supplemental instruction sufficient to clarify the jury's uncertainty." *People v. Wilford*, 111 P.3d 512, 517 (Colo. App. 2004). When it does so, we review the court's decision to give that instruction for an abuse of discretion. *People v. McClelland*,

4

2015 COA 1, ¶ 14. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or contrary to law. *People v. Tibbels*, 2019 COA 175, ¶ 31. In the context of instructional error, a court abuses its discretion where an instruction is legally inaccurate or if it misleads or confuses the jury. *Id.*; *People v. Gwinn*, 2018 COA 130, ¶ 31 ("A court abuses its discretion if it bases its ruling on an erroneous view of the law . . . ."); *Bryant*, ¶ 87. We review de novo whether a jury instruction accurately reflects the law. *Tibbels*, ¶ 31.

¶ 9 "[W]hen a trial court misinstructs the jury on an element of an offense, either by omitting or misdescribing that element, that error is subject to constitutional harmless or plain error analysis . . . ." *Griego v. People*, 19 P.3d 1, 8 (Colo. 2001). "A constitutional error is harmless when the reviewing court is confident beyond a reasonable doubt that the error did not contribute to the verdict obtained." *Id.* at 8-9 (citing *Neder v. United States*, 527 U.S. 1, 15 (1999)).

C. The Instruction Correctly Defined "Abuse"

¶ 10 Espinosa argues generally that the trial court should not have taken language from *Lovato*, as "statements taken from opinions do

5

not necessarily translate with clarity into jury instructions." *Evans v. People*, 706 P.2d 795, 800 (Colo. 1985). However, Espinosa does not challenge the first or third sentences of the instruction's definition of "sexual abuse." The first sentence, defining "abuse" as "pain, injury, or discomfort of a serious nature," was closely modeled after *Lovato*. *See Lovato*, ¶ 32. But because Espinosa does not challenge this phrasing, we will not address it.

¶ 11     Instead, Espinosa challenges the second and fourth sentences. Espinosa first contends that the trial court erred by instructing the jury that "[t]he pain, injury, or discomfort can be either of a physical or an emotional nature." We disagree.

¶ 12     As with the other aspects of this instruction, the trial court gleaned this language from *Lovato*, which had reasoned that the sexual assault on a child (SAOC) statute is intended to protect children from "both the emotional and sometimes physical harm that comes from abuse to the child's intimate parts . . . ." *Lovato*, ¶ 37 (distinguishing the SAOC statute from the child abuse statute, "which protects children from direct physical injury and endangerment to life or health"). Espinosa maintains that the trial

6

court should not have relied on *Lovato*, arguing that the *Lovato* division's discussion regarding emotional harm was merely dicta.

¶ 13     We note that the *Lovato* division's definition of "abuse" as meaning "pain, injury, or discomfort" is largely consistent with the term's generally accepted meaning in this context. *Lovato*, ¶¶ 32-33; *see People v. Padilla-Lopez*, 2012 COA 49, ¶ 7 (When interpreting statutes, "[w]e accord words and phrases their plain and ordinary meaning."). In the legal context, "abuse" is defined as (1) "[a] departure from legal or reasonable use; misuse" and (2) "[c]ruel or violent treatment of someone; specif[ically], physical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury." Black's Law Dictionary 12 (11th ed. 2019). In addition, whether dicta or not, the *Lovato* division's reference to emotional harm was also consistent with this ordinary meaning. Here, the trial court defined "sexual abuse" in similar terms, encompassing both physical and emotional pain, injury, or significant discomfort.

¶ 14     Espinosa argues that abuse only includes physical pain. But this argument ignores the potentially devastating impact of emotional maltreatment. Indeed, by its very nature, sexual abuse is

more likely to cause emotional harm than physical pain. *See Lovato*, ¶ 37 (discussing "the legislature's intent to protect children . . . from both the emotional and sometimes physical harm that comes from abuse to the child's intimate parts"). For example, consider a scenario in which a perpetrator touches the victim's intimate parts (or makes the victim touch the perpetrator's intimate parts), not for the purpose of causing physical injury, but rather to control, degrade, or otherwise mistreat the victim in a sexual way. Such conduct would not fall within Espinosa's definition of "abuse." But nothing in the statute suggests the legislature intended such a narrow view, rather than the commonly held meaning reflected in the general use of the term.

¶ 15    Thus, while we agree with Espinosa that crafting jury instruction language by quoting from case law is "generally an unwise practice," *Evans*, 706 P.2d at 800,[1] we conclude that the trial court's instruction that pain, injury, or significant discomfort can be either of a physical or emotional nature correctly stated the

---

[1] This practice is particularly risky when the language from which the jury instruction is crafted does not come from a case involving a jury instruction issue.

law.  Accordingly, we perceive no error in this part of the instruction.  *See Bryant,* ¶ 100.

### D. The Instruction Regarding the Import of the Perpetrator's Motivation Was Misleading

¶ 16    Espinosa also takes issue with the last sentence of the jury instruction, contending that the trial court erred by instructing the jury that "[i]t is the nature of the act that renders the abuse 'sexual' and not the motivation of the perpetrator."  We agree with Espinosa.

¶ 17    The trial court again looked to *Lovato* when crafting this part of the instruction.  Specifically, the trial court relied on the *Lovato* division's holding that "sexual abuse," as the term is used to define "sexual contact," requires no "'sexual motivation' on the part of a perpetrator."  *Lovato,* ¶ 32.  Following *Lovato*'s lead, the trial court instructed the jury that, essentially, the perpetrator's motivation is irrelevant in determining whether an act constitutes sexual abuse; rather, the trial court said, the sole consideration is the nature of the act itself.  But, in our view, the trial court misconstrued the holding from *Lovato.*

¶ 18    True, the *Lovato* division specifically stated that sexual abuse does not require a "sexual motivation."  *Id.*  However, to the extent

9

*Lovato* discussed the kind of motivation necessary to find "sexual abuse," we do not read *Lovato* to stand for the proposition that the motivation of the perpetrator is irrelevant. Rather, *Lovato* specifically explained that the perpetrator's motivation need not involve "sexual passion, lust, or lascivious intent." *Id.* at ¶ 31 (citing *People v. White*, 224 Cal. Rptr. 467, 476 (Ct. App. 1986)). To require otherwise would make sexual "abuse" redundant, as it would encompass nothing more than what is already covered by sexual arousal and sexual gratification.

¶ 19　　In our view, the trial court read the *Lovato* language too broadly — so broadly, in fact, that the term would encompass actions that are clearly not within the intended scope of the statute. Take, for example, parents who spank their children. Because spanking at least arguably involves the intent to cause pain, injury, or discomfort to the child's buttocks (which are included in the definition of intimate parts, § 18-3-401(2)), the act may be considered "sexual abuse" as the trial court defined it here, and that parent could potentially face charges under the SAOC statute. But as the *Lovato* division stated, "[i]t would be incongruous to say

that ['sexual contact'] could occur without having a 'sexual element.'" *Lovato*, ¶ 25.

¶ 20    Instead, we read the division's decision in *Lovato* simply to acknowledge that the sexual nature of the act may be viewed from the victim's perspective rather than the perpetrator's. In other words, if the nature of the act is likely to be perceived by the victim as mistreatment of a sexual nature (such as an improper touching), and that mistreatment is such that the victim is likely to experience physical or emotional pain or discomfort, the act can be sexual abuse.

¶ 21    That being said, the perpetrator's motivation is still relevant to the determination. While the perpetrator need not be motivated by passion, lust, lasciviousness, or lewdness (motivations that are perhaps more indicative of sexual arousal or sexual gratification), the perpetrator does need to have a motivation to cause the victim such pain or discomfort as specifically derives from the sexual nature of the act.[2] In other words, the perpetrator must act for the

_____

[2] To the extent the division in *Lovato* held otherwise, we respectfully disagree and decline to follow that decision. *See People v. Smoots*, 2013 COA 152, ¶ 20 ("We are not obligated to follow the precedent

11

purpose of causing sexual humiliation, sexual degradation, or other physical or emotional discomfort of a sexual nature. To read the statute otherwise would be to disregard the requirement that the perpetrator act "for the purpose[] of *sexual . . . abuse*." § 18-3-401(4)(a) (emphasis added); *see also People v. Moore*, 2013 COA 86, ¶ 11 (noting that appellate courts "do not presume that the legislature used language idly" (citing *People v. J.J.H.*, 17 P.3d 159, 162 (Colo. 2001))). Thus, the perpetrator's purpose is not irrelevant to the determination of whether the abuse was sexual.

¶ 22    For the above reasons, we conclude that the trial court's instruction exceeded the holding in *Lovato*. But more importantly, the inclusion of this instruction potentially misled the jury. By instructing that Espinosa's motivation was irrelevant to determining whether the abuse was sexual, the trial court ignored the distinct danger that the jury would overlook the remaining part of the "sexual contact" definition. In particular, the trial court informed the jury that it must find that Espinosa acted with a particular purpose (i.e., sexual arousal, gratification, or abuse), but that the

established by another division, even though we give such decisions considerable deference.").

12

perpetrator need not have been motivated by a sexual purpose. Read together, these instructions may have confused the jury as to whether Espinosa's motivation — or purpose — was relevant at all.

¶ 23    The trial court thus incorrectly instructed the jury, and consequently, it abused its discretion. *Tibbels*, ¶ 31; *Gwinn*, ¶ 31 ("A court abuses its discretion if it bases its ruling on an erroneous view of the law . . . ."). Because the trial court misinstructed the jury on an element of the offense that Espinosa was charged with — namely, the definition of "sexual contact" — the trial court's error is subject to a constitutional harmless error analysis. *Griego*, 19 P.3d at 8.

¶ 24    The jury could have convicted Espinosa if it found that he acted for any of three improper purposes: sexual arousal, sexual gratification, or sexual abuse. §§ 18-3-401(4)(a), -405.3(1). That the jury specifically requested the trial court clarify what the term "sexual abuse" meant suggests that the jury was not necessarily convinced that Espinosa acted for the alternative purposes of sexual arousal or sexual gratification. Accordingly, whether Espinosa acted for the purpose of "sexual abuse" may have been

13

crucial to the jury's decision, and thus a proper instruction on the phrase was of particular importance.[3]

¶ 25　Moreover, the defense largely rested on the theory that Espinosa had what he asserted was a relatively innocent motivation for grabbing his daughter's breasts; by instructing that Espinosa's motivation was irrelevant to find the abuse to be sexual, the trial court all but stripped Espinosa's theory of any effect. Under these circumstances, we cannot say that we are confident beyond a reasonable doubt that the trial court's misleading instruction did not contribute to Espinosa's guilty verdict. Therefore, we reverse the judgment of conviction and remand for a new trial. *Griego*, 19 P.3d at 8-9.

### E.  The Jury Instruction on Remand

¶ 26　Having concluded that the instruction given was erroneous, we nevertheless decline to provide specific language that should be used, recognizing that our silence will likely be frustrating to the

---

[3] We do not suggest that a definition of "sexual abuse" must always be provided to the jury. Nor do we suggest that it was error to provide some additional guidance to the jury once it requested a definition. We merely hold that the additional instruction provided here was erroneous because it potentially misled the jury.

trial court, the parties, and even future litigants. There are several reasons for our reticence. First, we cannot know whether, upon retrial, any instruction of sexual abuse will be needed. For example, the jury may not ask for any clarification about the definition. Second, the question before us was whether the instruction given was erroneous; not what specific instruction should have been given. Indeed, we take to heart the language from the Colorado Supreme Court's Model Criminal Jury Instructions Committee (the Committee) that "courts should be cautious when drafting definitional instructions based on extra-statutory sources." COLJI-Crim. ch. A, term definitions (2019). And third, we recognize that, should we set forth with specificity an instruction to be given, that instruction would essentially become the instruction to be given in the future. Yet, there is not necessarily only one instruction that would accurately state the law in this area. And this body is not charged with crafting model jury instructions or selecting which of several options would be the best instruction. That is the Committee's function.

¶ 27     For these reasons, we decline to craft a specific instruction that should be used on remand should any such instruction become necessary.

### III.   Espinosa's Remaining Contentions

¶ 28     In light of our disposition of the jury instruction issue, and because we cannot say if, how, or in what context Espinosa's remaining issues will arise on retrial, we decline to address them.

### IV.   Conclusion

¶ 29     The judgment is reversed and the case remanded for a new trial.

JUDGE TERRY and JUDGE YUN concur.