19CA1239 Peo v Snodgress 11-24-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA1239 El Paso County District Court No. 18CR2675 Honorable Laura A. Tighe, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Joseph Benjamin Snodgress, Defendant-Appellant. JUDGMENT AFFIRMED Division I Opinion by JUDGE DUNN Dailey and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 24, 2021 Philip J. Weiser, Attorney General, Hannah Bustillo, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee The Noble Law Firm, Antony Noble, Heidi Tripp, Lakewood, Colorado; Pickard Law, P.C., Joe Pickard, Jay Pickard, Kevin Massaro, Littleton, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Joseph Benjamin Snodgress, directly appeals his convictions for child abuse and sexual assault on a child by one in a position of trust (child sex assault). We affirm. I. Background ¶ 2 One day in 2018, Snodgress was caring for the victim (his fifteen-month-old stepdaughter) while his wife was at work. Early that evening, Snodgress called his wife to report the victim was “bleeding in her diaper,” and his wife told him to take the victim to Children’s Hospital. When they arrived at the hospital, the victim “was screaming” and “bleeding pretty profusely.” Upon examination, doctors discovered a “gaping laceration” from the victim’s hymen, through her perineum, and into her rectum. Pediatric gynecological surgery was required to repair the injury. ¶ 3 When asked what happened, Snodgress reported that he was changing the victim and that she had a “tar-like” stool after being constipated. He said that, when he wiped her, he noticed blood on the victim’s vagina. He later added that he “forcefully” wiped the victim. 
2 ¶ 4 Because the victim’s injuries were consistent with “penetrating trauma” and “without an adequate explanation,” hospital staff reported the injuries to the Jefferson County Sheriff’s Office. ¶ 5 The prosecution later charged Snodgress with, as relevant here, (1) child abuse and (2) child sex assault. A jury found Snodgress guilty of both counts, and the court sentenced him to an indeterminate prison term of nine years to life. ¶ 6 On appeal, Snodgress contends we must reverse his child sex assault conviction because (1) the trial court committed reversible instructional error and (2) insufficient evidence supports the conviction. II. Jury Instructions ¶ 7 Snodgress first contends the trial court committed instructional error by “giving the prosecution’s” instruction on “sexual abuse” and declining his proposed “sexual abuse” instruction. We disagree. A. Child Sex Assault ¶ 8 A person is guilty of child sex assault when he “knowingly subjects another not his . . . spouse to any sexual contact . . . if the victim is a child less than eighteen years of age and the actor 
3 committing the offense is one in a position of trust with respect to the victim.” § 18-3-405.3(1), C.R.S. 2021 (emphasis added). ¶ 9 The statute defines “sexual contact” as “[t]he knowing touching of the victim’s intimate parts by the actor . . . for the purposes of sexual arousal, gratification, or abuse.” § 18-3-
401(4)(a), C.R.S. 2021. The statute, however, doesn’t define “abuse” (as it is used within the “sexual contact” definition), so a division of our court considered the meaning of that term in People v. Lovato, 2014 COA 113, ¶¶ 20, 26. ¶ 10 In Lovato, the defendant physically beat the child-victim and, as part of that abuse, stomped on the victim’s testicles. For the latter conduct, the jury found the defendant guilty of child sex assault. Id. at ¶¶ 7, 10. On appeal, the defendant argued that insufficient evidence supported his child sex assault conviction because there was no evidence that he had a sexual motive — i.e., that he stomped on the victim’s testicles for sexual arousal or sexual gratification. Id. at ¶ 19. ¶ 11 The Lovato division rejected the defendant’s argument. In doing so, it first construed the statutory definition of “sexual contact,” concluding that “sexual” modifies “abuse” as well as 
4 “gratification” and “arousal.” Id. at ¶ 26. Thus, it concluded that “sexual contact” must be for the purpose of “sexual gratification,” “sexual arousal,” or “sexual abuse.” Id. at ¶ 27. ¶ 12 The Lovato division then disagreed with the defendant that “sexual abuse” requires a “sexual motivation.” See id. at ¶ 32 (discerning “no statutory requirement of a ‘sexual motivation’ on the part of a perpetrator under this definition”). To hold otherwise, in its view, would render the remaining terms (“sexual arousal” and “sexual gratification”) redundant. Id. at ¶ 31; see also People v. White, 224 Cal. Rptr. 467, 476 (1986) (interpreting a similar California statute and concluding that “sexual abuse” doesn’t require a sexual motivation or lewdness because then it would be redundant to “sexual arousal” and “sexual gratification.”), cited with approval in and adopted by Lovato. Instead, Lovato, ¶ 32, gave “abuse” its plain meaning — to inflict pain, injury, or discomfort. And it concluded that “sexual abuse” occurs when the actor “abuses” (i.e. inflicts pain or injury to) the victim’s intimate parts. Id. ¶ 13 Consistent with the child sex assault statute, the Colorado model criminal jury instructions include a definitional instruction 
5 for “sexual contact.” See COLJI-Crim. F:337 (2020). And in 2017, comment 3 was added to that instruction, which cites Lovato and parenthetically recognizes its holding that “sexual abuse” “does not require a ‘sexual motivation’ on the part of the perpetrator.” COLJI-
Crim. F:337 cmts. 3, 4 (2020). B. The Proposed Jury Instructions ¶ 14 At the jury instruction conference, neither party objected to the child sex assault elemental instruction or the instruction defining “sexual contact.” But, citing Lovato and comment 3 to model jury instruction F:337, the prosecution tendered an additional instruction which stated, “[s]exual abuse does not require a ‘sexual motivation’ on the part of the [a]ctor.” ¶ 15 Snodgress objected to the proposed “sexual abuse” instruction, arguing that it was misleading because it suggested the defendant didn’t need to intend “sexual contact” or have any intent, in contravention of the statute. Snodgress instead proposed instructing the jury that “[s]exual abuse requires knowingly subjecting the victim to targeted sexual contact for the purposes of abuse.” 
6 ¶ 16 The court ultimately accepted the prosecution’s instruction, agreeing it was consistent with the model jury instruction committee’s comment and Lovato.
1 But it declined to give Snodgress’s proposed instruction because it was “not convinced” that “there needs to be any language other than that which has been stated” by the model jury instruction committee. C. Standard of Review and Legal Principles ¶ 17 A trial court has a duty to correctly instruct the jury on all matters of law. E.g., People v. Espinosa, 2020 COA 63, ¶ 8. We review de novo whether the jury instructions adequately informed the jury of the governing law. McDonald v. People, 2021 CO 64, ¶ 54. And if the jury instructions accurately inform the jury of the relevant law, a trial court has broad discretion in deciding to give, or not to give, a particular instruction. See id. A trial court abuses its discretion only if its instructional ruling is manifestly arbitrary, unreasonable, or unfair. Id. When determining whether the jury was properly instructed, we consider the jury instructions as a whole. Day v. Johnson, 255 P.3d 1064, 1067 (Colo. 2011). 1 The prosecution’s “sexual abuse” instruction became part of instruction 17. 
7 ¶ 18 Because judicial opinions and jury instructions serve different purposes, the use of an excerpt from an opinion in a jury instruction is “generally an unwise practice.” Evans v. People, 706 P.2d 795, 800 (Colo. 1985). But an instruction excerpted from an opinion that expands upon, and doesn’t contradict, the other jury instructions may help explain the applicable law and isn’t categorically improper. See, e.g., People v. Carter, 2015 COA 24M-2, ¶¶ 42-46; see also Espinosa, ¶¶ 14, 15 (concluding that portions of a jury instruction that expanded on the definition of “sexual abuse” based on Lovato didn’t constitute error because the instruction correctly stated the law); People v. Benton, 829 P.2d 451, 453 (Colo. App. 1991) (holding that a jury instruction incorporating an excerpt from an appellate opinion on an element of a crime was appropriate and warranted by the evidence). D. The Sexual Abuse Instruction ¶ 19 We are unpersuaded that the trial court abused its discretion by instructing the jury that “sexual abuse” doesn’t require a “sexual motivation.” ¶ 20 First, the sexual abuse instruction is taken directly from the model jury instruction comments. See COLJI-Crim. Preface (2020) 
8 (noting that the model jury instructions and comments are approved by the supreme court and are intended as guidelines); see also Galvan v. People, 2020 CO 82, ¶ 38 (recognizing that the model instructions have been “approved in principle” to guide the trial courts). As well, the instruction is directly rooted in Lovato, which held that “sexual abuse” (as that term is used in the definition of “sexual contact”) has “no statutory requirement of a ‘sexual motivation’ on the part of a perpetrator.” Lovato, ¶ 32. Thus, the jury instruction accurately summarized Lovato and correctly stated the law. See Espinosa, ¶¶ 12, 14-15 (noting that portions of the jury instruction defining “sexual abuse” with language “gleaned” from Lovato “correctly stated the law”). ¶ 21 Second, the instruction neither contradicted nor conflicted with the court’s other instructions. Compare Carter, ¶ 45 (including an opinion excerpt in jury instructions didn’t amount to error where the excerpt didn’t conflict with any other instruction and it “accurately informed the jury of the applicable law”), with Evans, 706 P.2d at 799-800 (holding that an opinion excerpt shouldn’t have been included with statutory definition because it directly contradicted the statutory language). Indeed, when read together 
9 with the child sex assault elemental instruction and the definition of “sexual contact,” the “sexual abuse” instruction did no more than expand on the definition of “sexual contact” and accurately inform the jury of the law.
2 ¶ 22 Even so, Snodgress contends that the jury was confused about the “sexual abuse” instruction because it asked the court to explain the definitional difference between child abuse and sexual assault. But the jury didn’t express confusion about the definition of “sexual contact.” And it didn’t seek clarification about the meaning of “sexual abuse” or “sexual contact.” We therefore can’t infer that the jury was confused about the “sexual abuse” instruction simply because it asked a question about the charged crimes. ¶ 23 And to the extent Snodgress contends that the prosecution’s “sexual abuse” instruction eliminated the mens rea for child sex assault or lowered the prosecution’s burden of proof, we disagree. The elemental instruction for child sex assault plainly required the jury to find that Snodgress “knowingly” subjected the victim to 2 Nor did the court provide the jury with any committee commentary. Rather, the “sexual abuse” instruction used language taken from Lovato that the committee cited in comment 3. COLJI-
Crim. F:337 cmt. 3 (2020). 
10 “sexual contact.” See § 18-3-405.3(1). And the “sexual contact” instruction required the jury to find that Snodgress “knowingly” touched the victim’s intimate parts “for the purpose” of “sexual abuse.” See § 18-3-401(4). The “sexual abuse” instruction only added that Snodgress wasn’t required to have a sexual motivation for the purpose of “sexual abuse” — that is, the abuse didn’t require sexual arousal or sexual gratification. Nothing in this instruction eliminated the mens rea requirement or lowered the burden of proof. ¶ 24 We also disagree that the Lovato division’s interpretation of “sexual abuse” was unnecessary to the resolution of that case and therefore was dicta. To the contrary, to resolve the defendant’s contention that insufficient evidence supported his conviction, the Lovato division was required to construe the child sex assault statute and determine whether “sexual abuse” required a “sexual motivation.” See Espinosa, ¶ 12 (rejecting similar argument that Lovato’s statutory interpretation was “merely dicta”). ¶ 25 At bottom, Snodgress appears to simply disagree with Lovato and essentially asks us to import a sexual motivation into the definition of sexual abuse. But we agree with the Lovato division 
11 that doing so would render the two companion terms in the “sexual contact” definition — “sexual arousal” and “sexual gratification” — redundant. See Lovato, ¶¶ 31-32. We therefore see no reason to depart from Lovato. ¶ 26 That leaves us with Espinosa, which was decided after the trial in this case and after Snodgress filed his opening brief. In Espinosa — like here — the trial court instructed the jury on “sexual abuse,” “drawing language from Lovato.” Espinosa, ¶ 7. The Espinosa division concluded that much of the instruction challenged there “correctly stated the law” and was not error. Id. at ¶ 15. But the division took issue with the portion of the instruction stating, “it is the nature of the act that renders the abuse ‘sexual’ and not the motivation of the perpetrator.” Id. at ¶¶ 7, 16. The division concluded that this statement “misconstrued the holding from Lovato.” Id. at ¶ 17. But the “sexual abuse” instruction here did not include similar language. And it didn’t tell the jury to disregard the perpetrator’s motivation. Thus, Espinosa doesn’t lead us to 
12 conclude that the trial court’s “sexual abuse” instruction here was beyond its discretion.”
3 ¶ 27 Given all this, we conclude the court acted within its discretion when it instructed the jury on “sexual abuse.” E. Snodgress’s Proposed Instruction ¶ 28 Snodgress also tendered an instruction on “sexual abuse.” His stated, “[s]exual abuse requires knowingly subjecting the victim to targeted sexual contact for the purposes of abuse.” ¶ 29 The prosecutor objected to Snodgress’s instruction, arguing that it added a mens rea requirement (“knowingly subjecting”) and increased the prosecution’s burden of proof. The trial court rejected the tendered instruction. ¶ 30 We perceive no abuse of discretion. Snodgress’s proposed instruction paraphrased the Lovato division’s conclusion that the 3 We recognize that People v. Espinosa went on to apparently require the perpetrator to have some sort of sexual motivation. 2020 COA 63, ¶ 21 (“[T]he perpetrator must act for the purpose of causing sexual humiliation, sexual degradation, or other physical or emotional discomfort of a sexual nature.”). But Espinosa doesn’t offer any analysis or authority for doing so and doesn’t meaningfully distinguish Lovato. At any rate, to the extent Espinosa departed from Lovato, we can’t conclude the trial court abused its discretion by not anticipating that departure. 
13 evidence in that case was sufficient to support the defendant’s conviction. It wasn’t based directly on the Lovato division’s statutory interpretation. ¶ 31 And in any event, Snodgress’s proposed instruction was confusing. It included an additional mens rea requirement — “knowingly subjecting the victim to . . . contact.” (Emphasis added.) And it included within its definition the words it intended to define (like “sexual contact” and “abuse”). ¶ 32 We therefore conclude that rejecting the instruction was not manifestly arbitrary, unreasonable, or unfair. III. Sufficiency of the Evidence ¶ 33 Snodgress also contends that insufficient evidence supports his child sex assault conviction. We disagree. A. Standard of Review ¶ 34 We review sufficiency of the evidence claims de novo. People v. Donald, 2020 CO 24, ¶ 18. In doing so, we must determine whether the evidence, when viewed in the light most favorable to the prosecution, is sufficient to support a conclusion by a rational jury that the defendant is guilty beyond a reasonable doubt. Dempsey v. People, 117 P.3d 800, 807 (Colo. 2005); People v. Market, 2020 COA 
14 90, ¶ 47. We give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. Market, ¶ 47. ¶ 35 If there is evidence upon which the jury may reasonably infer an element of the crime, sufficient evidence supports that element. People v. Grant, 174 P.3d 798, 812 (Colo. App. 2007). It is for the jury — not us — to determine witness credibility and what weight, if any, to give evidence. See People v. Plancarte, 232 P.3d 186, 192 (Colo. App. 2009). So it doesn’t matter that we might have reached a different conclusion had we sat on the jury. Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010); see also People v. Arzabala, 2012 COA 99, ¶ 13 (stating that an appellate court may not act as a thirteenth juror and set aside a verdict because it might have drawn different conclusions from the evidence). B. Discussion ¶ 36 As explained, the prosecution had to prove that Snodgress touched the victim’s intimate parts “for the purposes of sexual . . . abuse.”
4 §§ 18-3-401(4)(a), 18-3-405.3(1). Snodgress contends that 4 The prosecution didn’t argue at trial that the “sexual contact” was for either “sexual arousal or gratification.” 
15 the prosecution didn’t do this because it presented no evidence that he “specifically targeted the victim’s intimate parts for the purpose of causing harm or pain.” ¶ 37 Viewing the evidence in the light most favorable to the prosecution — as we must — we conclude that the prosecution presented sufficient and substantial evidence from which the jury could infer that Snodgress touched the victim’s intimate parts for the purpose of causing harm or pain (in other words “for the purposes of sexual abuse”). ¶ 38 To start, the jury heard evidence that the victim’s intimate part (her vagina) was bleeding profusely and she was in pain. Indeed, the victim’s mother testified that, when they arrived at the hospital, the victim was “screaming” and “crying like she was in pain.” And an examining doctor testified that the victim was “quite uncomfortable” and “crying.” ¶ 39 The jury also heard substantial medical expert testimony about the severity of the victim’s vaginal injury and what could have caused it. ¶ 40 Dr. Jill Keyes, a pediatric emergency room physician who performed the initial examination of the victim, testified that the 
16 victim’s vaginal tear appeared to be a “non-accidental trauma.” Dr. Keyes said the injury did not fit the story reported by Snodgress because the laceration was so severe and the victim’s anus was completely intact with no trauma to it — instead, the injury was concentrated in the vagina to the perineum. Dr. Keyes testified that she was therefore concerned the injury was a “penetrating injury” to the vagina. ¶ 41 Dr. Antonia Chiesa, a member of the Child Protection Team at the hospital, also testified. Based on her expertise in child abuse pediatrics, Dr. Chiesa opined that the victim’s injury wasn’t the type of injury that happens “with routine daily handling” or with “normal, prudent wiping, or even aggressive wiping that gets a little too rough.” Instead, Dr. Chiesa testified the victim’s injury was “the type of injury [doctors] see when children have penetrating genital trauma from either severe accidents, sexual assault, or physical abuse.” However, the hospital social worker and investigating officers testified that the family didn’t report any accident or any other possible source of the injury beyond the “tar like” stool and forceful wiping. 
17 ¶ 42 Dr. Timothy Givens, an expert in pediatric medicine who also examined the victim, testified that he diagnosed the victim with “a laceration to her perineum and the vaginal area.” And he testified that, although he had frequently treated children “for issues related to bowel movement[s],” he had never seen an injury like the victim’s result from a hard bowel movement. ¶ 43 And Dr. Veronica Alaniz, an expert in pediatric gynecology and the doctor who surgically repaired the victim’s vaginal injury, testified that the victim’s injury was consistent with “penetrating genital trauma” — an injury caused by something from the outside penetrating the vagina beyond the hymen. She also stated that, based on her experience and expertise, the injury was “not consistent with a bowel movement” or an accident. And she explained the severity of the injury; she stated that the laceration went to the level of the anal sphincter (the muscle complex that controls fecal continence). ¶ 44 Finally, the jury saw photos showing the severity of the victim’s vaginal injury and could draw its own reasonable inferences — based on the evidence — about whether a bowel movement and 
18 wiping caused the depicted injury or whether Snodgress targeted the victim’s intimate parts for the purpose of causing harm or pain. ¶ 45 This is so even though no one testified that Snodgress touched the victim’s vagina for the purpose of causing harm or pain because “[i]ntent can rarely be proven other than through circumstantial or indirect evidence.” People v. Sena, 2016 COA 161, ¶ 16. And although Snodgress provided an alternate explanation — that the injury had “an unexplained, accidental cause” — it was for the jury to determine witness credibility, weigh the evidence, and resolve any evidentiary disputes. People v. Poe, 2012 COA 166, ¶ 14. ¶ 46 We therefore conclude that, based on the evidence presented, a reasonable juror could infer that Snodgress knowingly touched the victim’s vagina for the purpose of sexual abuse, i.e., to cause her harm or pain (and that he did, in fact, cause both). Sufficient evidence therefore supports the child sex assault conviction. IV. Conclusion ¶ 47 We affirm the judgment of conviction. JUDGE DAILEY and JUDGE KUHN concur.