24CA0985 Peo v Mondy 07-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0985
Jefferson County District Court No. 23CR1308
Honorable Scott B. Epstein, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Heather Lea Mondy,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Janet Kinniry, Gardner, Colorado, for Defendant-Appellant

¶ 1     A jury convicted defendant, Heather Lea Mondy, of several crimes related to a domestic violence incident.  Among them, she appeals her convictions for first degree assault and unlawful sexual contact.  We affirm.

## I.     Background

¶ 2     Mondy and her boyfriend (the victim) dated for several years.  But one spring day, the victim went to Mondy's home, told her that he had met another woman, and ended his relationship with Mondy.  Mondy was upset, so the victim left.  But Mondy called the victim and asked him to come back.  The victim returned to Mondy's home and stayed the night.

¶ 3     Early the next morning while the victim was still in bed, Mondy went outside and vandalized the victim's car, slashing the tires and defacing it with permanent marker.  Mondy then returned to the bedroom.  She sat on the bed next to the victim and concealed an item under a pillow.  She started to kiss the victim and touch his penis.  As Mondy started to remove the victim's underwear, she grabbed the item from under the pillow — a four-inch knife — and stabbed him at the base of his penis.  After calling

911, the victim was transported to the hospital and received medical treatment.

¶ 4     For this conduct, the prosecution charged Mondy with first degree assault, attempted first degree assault, unlawful sexual contact, criminal mischief, and second degree criminal tampering.

¶ 5     The jury convicted Mondy as charged. The district court merged the assault and attempted assault convictions and sentenced Mondy to ten years in prison.

## II.     Sufficiency of Evidence

¶ 6     Mondy contends that the prosecution presented insufficient evidence to support her convictions for first degree assault and unlawful sexual contact. We disagree.

### A.     Standard of Review

¶ 7     We review the record de novo to determine whether the prosecution presented sufficient evidence to support the conviction. *Gorostieta v. People*, 2022 CO 41, ¶ 16. In doing so, we view the evidence "as a whole and in the light most favorable to the prosecution" to determine if the evidence is "substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.*

(citation omitted).  And we "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence."  *Id.* at ¶ 17 (citation omitted).

### B.  First Degree Assault — Serious Bodily Injury

¶ 8  A person commits first degree assault if, "[w]ith intent to cause serious bodily injury to another person, [s]he causes serious bodily injury to any person by means of a deadly weapon."  § 18-3-202(1)(a), C.R.S. 2024.  At the time Mondy stabbed the victim, and as relevant here, "[s]erious bodily injury" included "bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, [or] a substantial risk of protracted loss or impairment of the function of any part or organ of the body."

§ 18-1-901(3)(p), C.R.S. 2022.[1]  The "substantial risk of death determination" turns on "the facts of the actual injury . . . not the risk generally associated with the type of conduct or injury in question."  *People v. Vigil*, 2021 CO 46, ¶ 33 (emphasis omitted).

¶ 9     Mondy maintains that the actual injury here was not a serious bodily injury because the treating emergency room physician testified that the knife did not pierce any of the victim's critical organs, nerves, or arteries.  So, Mondy argues, the victim could have but didn't suffer a serious bodily injury.  *See id.*

¶ 10     While we agree that the emergency room doctor testified that the victim didn't ultimately suffer life-threatening injuries to a vital organ or structure, that's not the only theory of serious bodily

---

[1] The legislature later amended the definition of serious bodily injury to include "a penetrating knife or penetrating gunshot wound."  Ch. 316, sec. 1, § 18-1-901(3)(p), 2023 Colo. Sess. Laws 1916.  But this definition was not in effect when Mondy stabbed the victim, and the district court did not use it when instructing the jury.  Thus, we reject the People's assertion that we may conclude as a matter of law that the victim's stab wound constituted a serious bodily injury under a definition that was not in effect at the time of the charged crime and that the jury never considered.  *See* § 2-4-202, C.R.S. 2024 ("A statute is presumed to be prospective in its operation."); *People v. Stellabotte*, 2018 CO 66, ¶ 3 (absent statutory language to the contrary, only "ameliorative, amendatory legislation applies retroactively to non-final convictions").

injury that the prosecution presented.  Indeed, the prosecution also argued that Mondy's attack resulted in a substantial risk of protracted loss or impairment of the function to any part or organ of the body.  *See* § 18-1-901(3)(p).  A protracted loss or impairment needn't be permanent.  *People v. Duncan*, 2023 COA 122, ¶¶ 11-17.  It's enough that the loss or impairment is "prolonged, continued, or extended."  *Id.* at ¶ 11.  And the plain and ordinary meaning of "impairment" is the "diminishment or loss of function or ability."  Merriam-Webster Dictionary, https://perma.cc/DM89-HPGC.

¶ 11    The evidence showed the victim sustained just such a protracted loss or impairment.  In particular, the victim testified that at the time of trial — eight months after the incident — he was "still going through the effects" of the stabbing, explaining that he had "pain in [his] testicles" and "problems with erections."  And the court admitted the emergency room physician's signed statement that the victim's injuries involved a substantial risk of protracted loss or impairment of the function of any part or organ of the body, including a "penile injury."  *See Duncan*, ¶ 22 (rejecting sufficiency challenge to serious bodily injury finding where the jury heard testimony about the injury itself, that such an injury typically

5

causes impairment, and that the victim experienced a months-long impairment).

¶ 12    Considering this evidence collectively and in the light most favorable to the prosecution, we have little trouble concluding that the evidence was sufficient for a jury to conclude, beyond a reasonable doubt, that the victim suffered a serious bodily injury.

### C.    Unlawful Sexual Contact

¶ 13    A person commits unlawful sexual contact if she "knowingly subjects a victim to any sexual contact" and "knows that the victim does not consent." § 18-3-404(1)(a), C.R.S. 2024. If the person causes the victim's submission "through the actual application of physical force or physical violence," the crime is a class 4 felony. § 18-3-402(4)(a), C.R.S. 2024; § 18-3-404(2)(b).

¶ 14    The jury found Mondy guilty of unlawful sexual contact but found that she did not cause submission through physical force or violence. As we understand it, Mondy contends that because the jury didn't find the sentence enhancer, insufficient evidence supported her conviction for unlawful sexual contact. In her view, the sexual contact between her and the victim was consensual, and the stabbing occurred after the consensual sexual contact. And,

6

she continues, because the jury found that she "did not use force, the jury could not have found that the stabbing" was the unlawful sexual contact.

¶ 15    Mondy misunderstands the law. "Sexual contact" means "[t]he knowing touching of the victim's intimate parts . . . for the purposes of sexual arousal, gratification, *or abuse*." § 18-3-401(4)(a), C.R.S. 2024 (emphasis added). "Abuse" means "pain, injury, or discomfort." *People v. Lovato*, 2014 COA 113, ¶ 32. A person subjects a victim to sexual contact for the purpose of abuse when the person acts "for the purpose of causing sexual humiliation, sexual degradation, or other physical or emotional discomfort of a sexual nature." *People v. Espinosa*, 2020 COA 63, ¶ 21. The prosecution may prove that the sexual contact was for the purpose of abuse by showing that the person "specifically targeted the victim's intimate parts" for that purpose. *Lovato*, ¶ 33.

¶ 16    The jury was therefore not required to find that Mondy caused the victim to submit through physical force or violence to find that the stabbing amounted to sexual abuse. Indeed, the prosecution's theory of unlawful sexual contact at trial was that Mondy initiated a consensual sexual encounter to lower the victim's guard so that she

7

could target his groin with the knife — a nonconsensual act of sexual abuse.

¶ 17   On this point, the prosecution presented sufficient and substantial evidence from which the jury could readily have concluded that Mondy stabbed the victim's groin for the purpose of causing him "sexual humiliation, sexual degradation, or other physical or emotional discomfort of a sexual nature." *Espinosa,* ¶ 21. We therefore reject Mondy's sufficiency challenge to the unlawful sexual contact conviction.

## III.   The Facebook Post

¶ 18   Last, Mondy maintains that the district court reversibly erred by admitting a Facebook post showing her holding a pipe cutter tool with the caption, "Hey ladies, here's a cool tool for cheaters! LoL XOXO Make them think about things!"[2]  We disagree.

¶ 19   We review evidentiary rulings for an abuse of discretion. *People v. Schlehuber*, 2025 COA 50, ¶ 42.

¶ 20   Before trial, the district court ruled that the Facebook post was extrinsic other act evidence but that it was nevertheless

---

[2] The caption also included a smiley face emoji.

relevant and admissible under CRE 404(b). *See id.* at ¶ 44 (listing the four-step analysis for admitting evidence of extrinsic acts that are suggestive of bad character). And the court agreed to provide a limiting instruction both contemporaneously with the evidence and in the closing jury instructions.

¶ 21 Mondy doesn't challenge the district court's conclusion that the Facebook post was logically relevant to a material fact independent of the prohibited inference of her bad character. *See id.* Rather, she argues only that the probative value of the post was substantially outweighed by the danger of unfair prejudice. *See* CRE 403.

¶ 22 But beyond claiming that the single post was "gratuitous, especially in light of the prosecution's other admissible evidence," Mondy fails to explain how the post was unfairly prejudicial. To the extent she claims unfair prejudice because the evidence hurt her case, that's not enough. Unfair prejudice is not the "prejudice that results from the legitimate probative force of the evidence." *People v. Gibbens*, 905 P.2d 604, 608 (Colo. 1995). And Mondy doesn't argue that the post "allow[ed the] jury to reach a decision based on an improper basis." *People v. Quintana*, 882 P.2d 1366, 1374 (Colo.

1994), *abrogated on other grounds by Rojas v. People*, 2022 CO 8; *see also People v. Brown*, 313 P.3d 608, 615 (Colo. App. 2011) (noting that unfairly prejudicial evidence has an "undue tendency to suggest a decision on an improper basis . . . such as sympathy, hatred, contempt, retribution, or horror") (citation omitted). Nor does she explain how the court's limiting instruction — given once when the post was admitted and again in the written jury instructions — was insufficient to neutralize any potential unfair prejudice.[3] *See People v. Kembel*, 2023 CO 5, ¶¶ 52-53 (remarking that a limiting instruction alleviates the risk of unfair prejudice); *see also Schlehuber*, ¶ 54.

¶ 23    Given this, we conclude that the district court didn't abuse its discretion by finding that the probative value of the Facebook post was not substantially outweighed by the danger of unfair prejudice.

### IV.    Disposition

¶ 24    We affirm the judgment.

JUDGE BROWN and JUDGE SCHOCK concur.

---

[3] To the extent Mondy presents new and expanded arguments in her reply brief regarding the Facebook post, we will not consider them. *See People v. Owens*, 2024 CO 10, ¶ 90.